IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY WILLIAMS,

                Petitioner,

      v.

SUPERINTENDANT TICE, et al.,

                Respondents.

                          CIVIL ACTION
                          NO. 21-5135

## OPINION

Slomsky, J.                                              March 26, 2024

## TABLE OF CONTENTS

**I.     INTRODUCTION** ........................................................................................................ 5

**II.    BACKGROUND** ...................................................................................................... 7

    **A.  Procedural History** ............................................................................................... 7

        1.   Theft at Victims' Home and Subsequent Investigation ......................................... 7
        2.   Petitioner is Apprehended at the Dunkin Donuts and Read his
             Miranda Rights………………………………………………………... 8
        3.   Petitioner's Confession at Police Headquarters .................................................. 8
        4.   Petitioner's Pre-Trial Motion to Suppress Evidence ........................................... 9
        5.   Events at Trial....................................................................................................... 12
        6.   Sentencing and Post-Sentence Motion ................................................................. 13
        7.   The Pennsylvania Superior Court Affirms the Trial Court ................................. 15
        8.   The Instant Habeas Petition.................................................................................. 17

**III.   STANDARD OF REVIEW** ................................................................................... 24

**IV.   ANALYSIS** ............................................................................................................ 25

    **A.  The Magistrate Judge Correctly Found that Petitioner's Claim
        Regarding the Denial of his Motion to Suppress is without Merit** ...................... 27

        1.   The Magistrate Judge Concluded that Petitioner's Claim Concerning
             the Trial Court's Denial of his Motion to Suppress is Without Merit ............... 27

2.   Petitioner Asserts that the Magistrate Judge Erred by Finding that the
     Trial Court Appropriately Denied Petitioner's Motion to Suppress the
     Videotaped Confession ......................................................................... 28

3.   The Magistrate Judge Correctly Found that Petitioner's Claim Concerning
     the Denial of his Motion to Suppress is Without Merit ..................................... 29

**B.   The Magistrate Judge Correctly Found that Petitioner's Claim
       Based on the Presence of Courtroom Security is Without Merit** ......................... 32

1.   The Magistrate Judge Concluded that Petitioner's Claim that
     He was Denied a Fair Trial due to the Presence of Courtroom Security
     is Without Merit ........................................................................... 32

2.   Petitioner Asserts that the Magistrate Judge Erred by Failing
     to Properly View the Issue of Security Personnel in the Court......................... 34

3.   The Magistrate Judge Correctly Found that Petitioner's Claim Based
     on the Presence of Courtroom Security is Without Merit................................. 35

**C.   The Magistrate Judge Correctly Found that Petitioner's
       Remaining Four Claims are Procedurally Defaulted** .................................. 39

1.   The Magistrate Judge Found that Petitioner's Remaining Four Claims
     are Procedurally Defaulted and that Petitioner Failed to Establish Cause
     and Prejudice............................................................................ 39

     a.  Procedural Default of Petitioner's Four Remaining Claims......................... 39

     b.  Cause and Prejudice to Overcome Default......................................... 41

2.   Petitioner Objects to the Magistrate Judge's Analysis of the Procedural
     Default Doctrine and that his Claims are Procedurally Defaulted.................... 43

3.   The Magistrate Judge Correctly Found that Petitioner's Four Remaining
     Claims are Procedurally Defaulted and that Petitioner Failed to Establish
     Cause and Prejudice ..................................................................... 45

     a.  The Magistrate Judge Correctly Found that Petitioner's Claims are
         Procedurally Defaulted................................................................ 45

     b.  The Magistrate Judge Followed the Correct Analysis of the Procedural
         Default Doctrine ..................................................................... 46

      c. Petitioner Fails to Establish Cause and Prejudice to Overcome
         Procedural Default ........................................................................... 47

**D. The Magistrate Judge also Correctly Found that Petitioner's Four
Procedurally Defaulted Claims are Meritless** ......................................... 50

    **1. The Magistrate Judge Correctly Found that Petitioner's Claim
Regarding Comments about the Prosecutor's Character
is Meritless** ..................................................................................... 51

      a. The Magistrate Judge's Findings on the Merits of Petitioner's
         Claim Regarding the Trial Court's Comments on the
         Prosecutor's Character .................................................................. 51

      b. Petitioner's Objections to the Magistrate Judge's Finding that
         His Claim Concerning the Trial Court's Comments about
         the Prosecutor is Meritless .......................................................... 52

      c. The Magistrate Judge Correctly Found that Petitioner's
         Objection to the Magistrate Judge's Analysis of the
         Trial Court's Comments about the Prosecutor is Meritless ........................ 53

    **2. The Magistrate Judge Correctly Concluded that Petitioner's Claim
that He was Denied the Opportunity to Show Reasonable Doubt
is Without Merit** .............................................................................. 54

      a. The Magistrate Judge Concluded that Petitioner's Claim that
         He was Denied the Opportunity to Show Reasonable Doubt
         is Without Merit ............................................................................ 54

      b. Petitioner Objects to the Magistrate Judge's Finding that the
         Trial Judge Did Not Abuse Her Discretion when Allegedly
         Precluding Petitioner from Showing Reasonable Doubt .............................. 55

      c. The Magistrate Judge's Correctly Found that Petitioner's Claim
         Concerning Reasonable Doubt is Meritless .................................... 56

    **3. The Magistrate Judge Correctly Concluded that Petitioner's
Claim about Impartial Remarks or Discussions of the Trial Court
was Meritless** .................................................................................. 57

a. The Magistrate Judge Concluded that the Trial Court did not Make Multiple Remarks and Discussions Showing Partiality .......... 57

b. Petitioner Objects to the Magistrate Judge's Finding that the Trial Judge did not Show Unfairness ........................................................ 57

c. Petitioner's Objection that the Magistrate Judge Failed to See that the Remarks of the Trial Court Showed Impartiality is without Merit ................................................................................. 58

**4. The Magistrate Judge Correctly Found that the Trial Court did not Abuse its Discretion when Excluding Irrelevant Photographs** ................................................................. 59

a. The Magistrate Judge Found that the Trial Court did not Abuse its Discretion when Excluding Irrelevant Photographs ................................. 59

b. Petitioner Objections to the Magistrate Judge's Finding that the Trial Court Appropriately Excluded Photographs and Other Documents .................................................................... 59

c. The Magistrate Judge Correctly Found that the Trial Court did not Abuse its Discretion and Petitioner's Objection is Meritless ..................................................................................... 60

**5. The Magistrate Judge Correctly Found that Petitioner had not shown any Violations of his Constitutional Rights** ........................................ 60

**V.     CONCLUSION** ..................................................................... 61

## I.   INTRODUCTION

Before the Court is a pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §
2254 ("Habeas Petition") filed by Petitioner Anthony Williams ("Petitioner"), a state prisoner
incarcerated at the Pennsylvania State Correctional Institution-Somerset ("SCI Somerset") located
in Somerset, Pennsylvania.  (See Doc. No. 1 at 1.)  He is serving a sentence after being convicted
in state court of receipt of stolen property taken during a burglary.  (See id.)  Petitioner raises six
claims for relief: (1) the trial court erred in not suppressing Petitioner's interview with the police,
as well as his phone records;[1] (2) the trial court denied Petitioner a fair trial through the positioning
of sheriffs in the courtroom;[2] (3) the trial court prejudiced Petitioner through its remarks at trial
about the prosecutor's character;[3] (4) the trial court abused its discretion in denying Petitioner the

---

[1] Following his arrest, Petitioner gave a videotaped confession statement at the police station.  (See
Doc. No. 19-2 at 10-12.)  During this statement to police, Petitioner voluntarily took out his
phone and showed the police various phone numbers and location settings.  (N.T. 7/30/2019, at
8.)  In state court, Petitioner filed a pre-trial Omnibus Motion to Suppress his Statement to Police
and the Phone Records.  (Doc. No. 19-2 at 6.)  The trial court denied this Motion to Suppress,
for reasons described infra.  (See id.)  In his Habeas Petition, Petitioner argues that the Motion
to Suppress should have been granted because he could not hear the Miranda warning given by
the police due to the weather conditions and his own remarks and, for these reasons, he did not
knowingly and voluntarily waive his Miranda rights.  (See Doc. No. 1-2 at 17.)

[2] At trial, one or two security officers sat near Petitioner.  (See Doc. No. 19-2 at 23.)  Petitioner
objected to their presence at trial and questioned why the officers were seated near him and not
the prosecutor.  (See Doc. No. 1-1 at 67-68.)  On the record, the trial court noted that the security
officers were seated near Petitioner because he was charged with a crime, and the prosecutor was
not.  (See id.)  The trial court supplemented her reasoning in a later opinion and noted that
heightened security was warranted due to Petitioner's prior charge for Felony Aggravated
Assault and "[w]hile [Petitioner] was awaiting trial in in the Lehigh County Jail he was charged
with Felony Aggravated Assault for allegedly attacking a correctional officer. The case is
currently awaiting trial before this Court and is unresolved at the time of this Opinion." (See
Doc. No. 19-1 at 11.)  Petitioner argues that the reason provided on the record was insufficient,
and the reason provided in the Opinion regarding Petitioner's prior charge was fabricated.  (See
Doc. No. 54 at 16-17.)

[3] Petitioner argues that the trial court's comments about the prosecutor in the presence of the jury
were inappropriate and warrant habeas relief.  (See Doc. No. 1-2 at 20.)  Petitioner objects to

right to "show reasonable doubt;"[4] (5) Petitioner was denied a fair trial because remarks made by the trial judge showed partiality;[5] and (6) the trial court improperly denied Petitioner the right to use certain evidence to support his testimony.[6]  (See Doc. No. 1-2 at 1-51.)

On January 22, 2024, United States Magistrate Judge Richard A. Lloret (the "Magistrate Judge") issued a Report and Recommendation (the "R&R"), recommending that the Habeas Petition be denied and a certificate of appealability not be issued.  (See Doc. No. 53 at 2.)  On February 5, 2024, Petitioner filed Objections to the R&R ("Objections").  (Doc. No. 54.)  For the

---

certain hypothetical examples and remarks referencing the prosecutor made by the trial court while instructing the jury on the need to avoid researching the case on the internet, as discussed more fully infra.

[4]  Petitioner argues that the trial court precluded Petitioner from "showing reasonable doubt." (Doc. No. 1-2 at 24-32.)  Essentially, Petitioner asserts that he was precluded from asking questions of Commonwealth witnesses for the purpose of showing that no burglary occurred. (See id.)  The prosecutor objected to this line of questioning on the grounds of relevancy, and the trial court sustained the objections.  (See id.)  Petitioner uses this ruling as support for the notion that he was prevented from casting doubt on the first element of his receipt of stolen property charge—whether the property in question was stolen.  (See id.)

[5]  Petitioner argues that he should be afforded habeas relief because the trial court "improperly interrupted him, disrupted his case, or bullied him" when making a comment during Petitioner's cross-examination of a Commonwealth witness which provided clarity on police and courtroom procedure.  (See Doc. No. 53 at 26.)  Petitioner argues that the trial court's interjection in this instance precluded him from asking questions to the witness for the Commonwealth and showed partiality or unfairness.  (See Doc. No 1-2 at 32.)

[6]  Petitioner contends that the trial court excluded certain photographs and other documents as irrelevant.  (Doc. No. 1-2 at 39-40.)  The photographs and documents depicted historical incidences of police misconduct, including the sentencing of the person who murdered the Central Park jogger and the 1991 Rodney King beating.  (See id.)  Petitioner offered them into evidence to show how his view of the police was shaped throughout his life.  (See id.)  The trial court excluded them as irrelevant to his charge of receipt of stolen property.  (See id.)

following reasons, the Court will approve and adopt the R&R (Doc. No. 53), deny the Petition (Doc. No. 1), and not issue a certificate of appealability.[7]

## II.   BACKGROUND

### A.  Procedural History

To provide context for the discussion of the legal issues raised in this case <u>infra</u>, the stages of Petitioner's arrest, his pre-trial motions, the events at trial, Petitioner's post-trial motions, and appeals will be partially chronicled.

#### 1.   Theft at Victims' Home and Subsequent Investigation

On February 4, 2019, the Whitehall Township Police (the "Police") received a report of a break-in on South Ruch Street in Lehigh County.  (Doc. No. 19-1 at 4.)  The victims promptly reported the break-in to police.  (<u>See</u> <u>id.</u>)  The stolen items included: 1) an Apple MacBook Pro, 2) a Nikon Model D5300 camera, and 3) various pieces of jewelry.  (<u>See</u> <u>id.</u>)  On February 6, 2019, the victims informed the police that they had found a MacBook Pro being sold online which they believed to be their stolen property.  (<u>See</u> <u>id.</u>)  On that same day, an officer learned that a camera of the same make and model had been sold to a pawn shop in Allentown, Pennsylvania.  (<u>See</u> <u>id.</u>) The camera had been sold by Petitioner on February 4, 2019, the same day as the theft.  (<u>See</u> <u>id.</u>) The serial number on the camera at the pawn shop matched the serial number on the missing camera.  (<u>See</u> <u>id.</u>)

The police officer next contacted the online seller of the MacBook Pro by setting up a "buy-bust operation" in which the police would go to the sales location on the pretense of purchasing

---

[7]  For the purposes of this Opinion, the Court has considered the Petition for a Writ of Habeas Corpus (Doc. No. 1), the Commonwealth's Answer (Doc. No. 19), the Report and Recommendation (Doc. No. 53), Petitioner's Objections to the Report and Recommendation (Doc. No. 54), and the relevant state court record.

the item in question.  (See id. at 5.)  The real purpose of going to the location, however, was to apprehend the suspect.  (See id.)  The meeting was set to take place at a Dunkin Donuts on February 6, 2019.  (See id.)

2.  Petitioner is Apprehended at the Dunkin Donuts and Read his Miranda Rights

On February 6, 2019, Petitioner arrived at Dunkin Donuts and was detained.  (See id.) Petitioner was informed that he was being arrested for receipt of stolen property.  (See id.)  An officer informed Petitioner that if he wanted to talk to them, they would need to inform him of his rights under Miranda v. Arizona, 384 U.S. 436 (1996).[8]  (See id.)  The police then verbally provided Petitioner with the Miranda warnings.  (See id.)   Petitioner next consented to the search of his vehicle, and the missing computer was recovered.  (See id.)  Out of "an abundance of caution," the police also obtained a search warrant to search the vehicle.  (See id. at 6.)

3.  Petitioner's Confession at Police Headquarters

On February 6, 2019, Petitioner was taken to Whitehall Township Police Headquarters. (See id.)  Once he arrived, Petitioner consented to a police interview which was recorded.  (See id.)  Less than an hour after Petitioner was read his Miranda rights at the Dunkin Donuts, and prior to the interview, Petitioner said that: 1) he had been provided with his Miranda rights, 2) he did not wish to go over his rights a second time, and 3) he understood his rights.  (See id.)  During the interview, Petitioner was again given the Miranda warnings and confessed to his involvement in the break-in at the residence on South Ruch Street.  (See id.)  During the interview, Petitioner took

---

[8] Under Miranda v. Arizona, before conducting a custodial interrogation, police officers must inform a suspect of, among other things, his right to remain silent and right to obtain an attorney. 384 U.S. 436, 499 (1966).

out his phone and showed police phone numbers and information about location tracking.  (See

N.T. 7/30/2019, at 8.)

      4.   Petitioner's Pre-Trial Motion to Suppress Evidence

      On April 22, 2019, Petitioner was arraigned on charges of Burglary, Theft by Unlawful

Taking of Movable Property, Receiving Stolen Property, and Conspiracy.  (See Doc. No. 19-1 at

3.)[9]  On May 22, 2019, Petitioner filed an Omnibus Pre-Trial Motion arguing, among other things,

that his statements to police and his phone records[10] should be suppressed.  (See Doc. No. 53 at

5.)  Petitioner argued that:

> at the time he initially encountered police, it was cold, dark, and raining, and the
> Dunkin Donuts parking lot was located on the side of a highway at rush hour.
> [Petitioner] claims that these circumstances caused him to talk excessively. He
> additionally claims that two of the officers continued to ask him questions while
> [the Police Officer] provided him with Miranda warnings. [Petitioner] contends
> that, because he was talking excessively and the other officers were directing
> questions at him, he did not hear the full Miranda warnings given by [the Police
> Officer]. He claims that, had he heard his Miranda rights, he would have exercised
> them.

(Doc. No. 19-2 at 8.)  Petitioner further asserted that:

> the trial court abused its discretion by ruling that [Petitioner's] waiver of his
> Miranda rights was valid. According to [Petitioner], in his prior encounters with
> law enforcement, he was read his Miranda rights and thereafter signed a written
> Miranda waiver. He asserts that no such written Miranda waiver was obtained in
> this case. [Petitioner] contends that police could have provided him with additional
> Miranda warnings when they arrived at the police station, but they failed to do so.
> [Petitioner] also states that, as a condition of parole, he is required to waive certain
> rights, and at the time he encountered police at the Dunkin Donuts, he thought his

---

[9]  At trial, the Commonwealth only proceeded on the charge of receipt of stolen property.  (See
Doc. No. 19-1 at 3.)

[10]  During the videotaped statement to police, Petitioner produced his phone and showed the police
phone numbers and tracking information that were on the phone.  (N.T., 7/30/2019, at 8.)  In
his pre-trial Motion, he argued that the information obtained from his phone during the
interview should be suppressed as fruit of the poisonous tree, which is the notion in criminal
law that the prosecution may not use evidence which was obtained based on a violation of a
defendant's constitutional rights.  See Nardone v. United States, 308 U.S. 338, 341 (1939).

right to remain silent was a right that he had waived by being on parole. [Petitioner] asserts that, due to the fact that he did not hear the initial <u>Miranda</u> warnings, the subsequent interrogation was unconstitutional and should have been suppressed. [Petitioner] further asserts that the trial court should have suppressed the phone records on the basis that they constitute fruit of the poisonous tree.

(<u>Id.</u> at 8-9.)

On July 30, 2019 and August 2, 2019, the trial court held hearings on Petitioner's Omnibus Motion to Suppress. (<u>See id.</u>) During the hearings, a police officer and a detective of the Whitehall Township Police Department testified about providing Petitioner with his <u>Miranda</u> warnings at the Dunkin Donuts. (<u>See id.</u> at 9, n. 7.) The videotaped interview at the police station and search warrant for the car was introduced into evidence. (<u>See id.</u>)

The First Police Officer (the "First Officer") testified that when he encountered Petitioner at the Dunkin Donuts and explained to him the reasons for his detainment, Petitioner started to offer explanations of his side of the story. (N.T., 7/30/19, at 20.) The First Officer interrupted Petitioner and "explained to him that [he] would like to get out of the rain and cold and go back to the station to talk." (<u>Id.</u>) Petitioner continued talking, however, and so the First Police Officer interrupted and said, "if you're going to keep talking, I have to give you your <u>Miranda</u> rights" since Petitioner was in police custody. (<u>Id.</u>) Then, the First Officer testified that he verbally gave Petitioner his <u>Miranda</u> warnings. (<u>Id.</u> at 20-21.) The First Officer testified that the verbal <u>Miranda</u> warnings he provided are identical to what he would have read to Petitioner from a form. (<u>Id.</u> at 23-24.) The First Officer recited from memory the <u>Miranda</u> warnings he gave to Petitioner at the Dunkin Donuts:

I basically gave him the <u>Miranda</u> warnings that I would usually give verbally, try to recite it exactly as I know it from our form. But it's basically, I wish to inform you that you have an absolute right to remain silent. That anything you say can and will be used against you in a court of law. You have the right to talk to an attorney before or have an attorney present with you during questioning. If you cannot afford to hire an attorney, one will be appointed to represent you without charge before

> questioning, if you so desire. If you do decide to answer any questions, you may stop at any time you wish. And then we add, do you understand these rights I explained to you? Which he acknowledged that he did. And I said, with these rights in mind, do you wish to talk to us? And he said he did.

(Id. at 21.)  The First Officer testified that at this time, Petitioner stated that he understood his rights, but still wanted to speak to police.  (Id. at 24.)

The second witness, a Detective (the "Detective") also testified at the Motion to Suppress Hearing.  (Id. at 54.) The Detective testified that he heard the First Officer verbally provide Petitioner with Miranda warnings, just as the First Officer had testified.  (See id.)  The Detective also testified that upon reaching the police station, Petitioner consented to the recording and videotaping of his interview.  (See Doc. No. 19-2 at 10-12.)  When the Detective began recording, he again asked Petitioner for consent to record, and Petitioner gave his consent.  (See id.)  The Detective stated on the recording that Petitioner had already been read his Miranda warnings, but he asked Petitioner whether he understood that those warnings still applied.  (See id.)  Petitioner indicated that he understood.  (See id.)  Again, the Detective reminded Petitioner that he had the right to remain silent, and Petitioner responded that he was "fully aware of his rights." (Id.)  Again, Petitioner stated that he "absolutely" was willing to speak with police at this time.  (Id.)  The Detective testified that during the interview, Petitioner consented to showing the officers information on his cell phone.  (See id.)  The audio was turned off at some point during the interview, but when it was reactivated the Detective again reminded Petitioner of his Miranda rights.  (See id.)  Petitioner again consented to speak with police and noted that he understood his rights.  (See id.)

Following the hearing, the trial court made findings of fact and denied Petitioner's Motion to Suppress on August 28, 2019.  The trial court found that:

> it seems apparent to this Court that the [Petitioner] began to offer spontaneous
> explanations and the police orally provided <u>Miranda</u> . . . to protect any evidence
> rather than leave the statements open to scrutiny.

(Doc. No. 53 at 13.)  Accordingly, the court found that the "police provided sufficient <u>Miranda</u>

warnings at the location of Petitioner's arrest, and reiterated those warnings during the videotaped

interview, and Petitioner knowingly and intelligently waived his rights."  (Doc. No. 19-2 at 7-8.)

5.  Events at Trial

On August 2, 2019, Petitioner invoked his right to represent himself <u>pro se</u> and, following

a hearing, a Public Defender was appointed to act as stand-by counsel.  (<u>See</u> Doc. No. 19-1 at 3.)

On January 29, 2020, the Commonwealth amended the Information to one-count of Receiving

Stolen Property against Petitioner.  (<u>See id.</u>)  On February 4, 2020, a jury trial took place.  (<u>See</u>

<u>id.</u>)  The United States Magistrate Judge who issued a Report and Recommendation in this case,

summarized the events at trial:

> At trial, [Petitioner] elected to represent himself with the public defender acting as
> stand-by counsel. [Petitioner] took the stand to testify in his defense. [Petitioner]
> informed the jury about his life and upbringing and introduced past contact with
> authority and police. [Petitioner] explained his previous experiences with police
> and how that shaped him. [Petitioner] readily admitted to the jury that he told police
> multiple stories and then attempted to explain why he lied to police. [Petitioner]
> informed the jury that he was convicted of burglary in the past but that is not the
> type of individual he is anymore. [Petitioner] had the opportunity to tell the jury
> about books that he had written and published and a business that he started.
> [Petitioner] portrayed himself as a businessman selling things to different people
> online.  [Petitioner] attempted to portray a persona of a newly reformed law-abiding
> citizen. He testified that he works helping people and that he works hard.
>
> [Petitioner]'s testimony about the incident in question appeared somewhat
> disorganized but appeared to the court as another admission. [Petitioner] admitted
> that he was at the scene of the burglary while with his friend "G." [Petitioner] was
> driving with "G" as a passenger when they stopped in the victim[s'] neighborhood
> to pass out flyers. [Petitioner] noticed that "G" was bringing items out of a home to
> his car. At some point, he noticed firearms in his vehicle under a blanket and saw
> "G" coming out of the house with a television. [Petitioner] testified that he rebuked
> his friend and had his friend take the firearms back into the house.  [Petitioner]
> swore he didn't touch anything and left. At some later time, his friend "G" gave

[Petitioner] a sob story and told him how he needed money. Apparently, "G" gave [Petitioner] the camera and laptop to sell so that he could help him make some money. [Petitioner] informed the jury that he would have no reason to think that the camera and laptop given to him by "G" were stolen.

The court provided significant leeway to [Petitioner]'s testimony over the objection of the Commonwealth. However, the court did make some attempts to curtail prolonged stories and/or experiences that were irrelevant.

(Doc. No. 53 at 4-5) (quoting Doc. No. 19-1 at 6-8.) On February 6, 2020, the jury found Petitioner guilty of Receiving Stolen Property as a third-degree felony. (See Doc. No. 19-1 at 3.)

6. Sentencing and Post-Sentence Motion

On June 2, 2020, the trial court imposed a three-to-seven-year term of imprisonment. (See id.) On June 8, 2020, Petitioner filed a timely Post-Sentence Motion. (See id.) On June 11, 2020, the trial court denied Petitioner's Post-Sentence Motion. (See id.) On June 16, 2020, Petitioner timely filed a Notice of Appeal to the Pennsylvania Superior Court and a Statement of Issues Complained on Appeal. (See id.) On July 22, 2020, the trial court filed its opinion following Petitioner's Concise Statement of Issues Complained of on Appeal. (Doc. No. 19-1.)

In the opinion, the trial court addressed seven (7) issues[11] raised by Petitioner in his concise statement:

(1) the Court erred in not suppressing [Petitioner's] interview with police and phone records, (2) the Court was prejudicial through its remarks at trial about the prosecutor's character, (3) the Court abused its discretion in denying [Petitioner] the right to show reasonable doubt; (4) the Court denied [Petitioner] a fair trial because remarks showed partiality; (5) the Court improperly denied [Petitioner] the right to use evidence to support his testimony; (6) the Court denied [Petitioner] a fair trial through the positioning of the Sheriffs in the courtroom; and (7) the Court denied

---

[11] The following seven (7) issues are nearly identical to the ones raised by Petitioner in his Habeas Petition, briefly described in the Introduction to this Opinion supra, and discussed more fully infra.

[Petitioner] due process through violation of [Pennsylvania Rule of Criminal Procedure] 704.[12]

(Doc. No. 19-1 at 8.)  The trial court held that Petitioner's first complaint was "thoroughly addressed" in its opinion on the Motion to Suppress.  (See id.)  Second, the court found no prejudice resulting from its remarks made during instructions to the jury.  (See id.)  "Such remarks, were made for illustrative purposes through off-the-cuff examples that would help the jury to better understand the importance of the instruction."  (Id. at 10.)

Third, the court addressed Petitioner's third, fourth, and fifth claims.  The court found that it did not abuse its discretion at trial in making certain evidentiary rulings to exclude irrelevant evidence.  (See id. at 11.)  The court noted that "[Petitioner] clearly had difficulty addressing the relevant issues at hand and the Court was cognizant of whether Appellant was wasting time or attempting to mislead the jury."  (Id.)

Fourth, the court addressed Petitioner's claim that the use of security personnel in the courtroom deprived him of a fair trial.  (See id.)  The court found that the use of sheriffs in the courtroom did not prejudice Petitioner or deprive him of a fair trial:

> This issue was addressed on the record during trial. [Petitioner] was not unreasonably restrained in front of the jury. The Court did not permit either the Commonwealth or the [Petitioner] to roam around the courtroom for general safety concerns. The Court informed Appellant during the trial that the Sheriff's Department was responsible for the safety of the courtroom and placement of deputies. [Petitioner] cannot demonstrate prejudice as all parties, including the jury, felt more comfortable with security in the courtroom. The Court considered the positioning of the sheriffs to be discrete. The deputies did not draw undue attention to the [Petitioner] as they were sitting throughout the courtroom.
>
> Moreover, the Court would note that the Sheriff's Department was on alert during this trial regarding the safety of the courtroom due to [Petitioner]'s own actions that

---

[12]  Petitioner argues that the trial court violated Pennsylvania Rule of Criminal Procedure 704(A)(1), which provides that "sentence in a court case shall ordinarily be imposed within 90 days of conviction or the entry of a plea of guilty or nolo contendere."  (Doc. No. 19-1 at 8) (citing Pa. R. Crim. P. 704(A)(1)).

flagged him as a safety risk. While [Petitioner] was awaiting trial in in the Lehigh County Jail he was charged with Felony Aggravated Assault for allegedly attacking a correctional officer. The case is currently awaiting trial before this Court and is unresolved at the time of this Opinion.

(<u>Id.</u> at 12.)

Finally, the court addressed Petitioner's complaint that his sentencing was delayed in violation of Pennsylvania Rule of Criminal Procedure 704, which provides that a sentence shall ordinarily be imposed within ninety (90) days of conviction. (<u>See id.</u> at 12) (citing Pa. R. Crim. P. 704(A)(1)). The court explained that Petitioner's sentencing was delayed for good cause because of the COVID-19 pandemic:

> [Petitioner] was convicted on February 6, 2020. At that time his sentence was deferred to March 27, 2020, for the preparation of a Pre-Sentence Investigation Report. On March 16, 2020, a week before [Petitioner's] scheduled sentencing date, the Supreme Court of Pennsylvania declared a statewide judicial emergency due to COVID-19. This statewide emergency was extended . . . [to] June 1, 2020 . . . [Petitioner] was sentenced on June 2, 2020, to a period of incarceration of 3-7 years conducted via Zoom in accordance with the Court's schedule in light of the pandemic.

(<u>Id.</u> at 12-13.) Therefore, in its opinion, the trial court urged the Pennsylvania Superior Court to affirm the judgment of conviction. (<u>Id.</u> at 13.)

7.  The Pennsylvania Superior Court Affirms the Trial Court

On appeal to the Pennsylvania Superior Court, Petitioner raised the same issues. (<u>See</u> Doc. No. 19-2 at 5-6.) On May 27, 2021, Petitioner's judgment of sentence was affirmed by the Pennsylvania Superior Court. (<u>See</u> Doc. No. 19-2.) First, the Pennsylvania Superior Court held that Petitioner knowingly, voluntarily, and intelligently waived his <u>Miranda</u> rights. (<u>See id.</u> at 10.) "Based on the totality of the circumstances, [Petitioner]'s claim on appeal that he did not hear the <u>Miranda</u> warnings provided by [the officer] is contradicted by the fact that [Petitioner] told both [officers] that he understood his rights but nevertheless wished to speak with police." (<u>Id.</u> at 13.)

Second, the Superior Court addressed Petitioner's complaint that the presence of security officers deprived him of a fair trial.  (See id. at 23.)  The Superior Court found that this complaint lacked merit, noting that "our research has revealed no case law that would prohibit a defendant from merely being flanked by uniformed deputies throughout trial."  (Id.)  Additionally, the Superior Court affirmed the trial court's finding that Petitioner's previous charge of Felony Aggravated Assault on a Correctional Officer was an exceptional circumstance warranting the presence of sheriff's deputies near Petitioner during trial.  (See id. at 24.)

Third, the Superior Court addressed Petitioner's complaints regarding various evidentiary rulings and remarks on the record by the trial court.[13]  (See id. at 13-14.)  The Superior Court held that Petitioner failed to preserve these challenges for appellate review because he did not make timely and specific objections at trial.  (See id.)  In so holding, the Superior Court relied on Pennsylvania Rule of Appellate Procedure 302(a), which provides as follows:

Rule 302. Requisites for Reviewable Issue.

(a)  General rule—Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.

(See id. at 14) (citing Pa. R. A. P. 302(a)).

The Superior Court also noted that "[Petitioner] concedes that he did not object to any of the trial court's comments, but nevertheless claims that the issue is not waived pursuant to Commonwealth v. Hammer, 494 A.2d 1054 (Pa. 1985)" where the Supreme Court of Pennsylvania held that the petitioner's arguments were preserved for appellate review despite the lack of

---

[13] These claims include Petitioner's second, third, fourth, and fifth claim raised in his post-trial motion, as set forth supra.

objection at trial due to the impropriety of the judge in the lower court.[14]  (Doc. No. 19-2 at 18, n. 5.)  However, the Superior Court found the case in <u>Hammer</u> to be distinguishable because in Petitioner's case "the trial court did not participate in the examination of a testifying defendant . . . or express[ ] an opinion regarding [Petitioner's] credibility . . ."  (<u>Id.</u>)  Thus, the Superior Court held that Petitioner's objections to the evidentiary rulings of the trial court, made by him for the first time in a post-trial motion, warranted no relief because they were not preserved for appellate review.  (<u>See</u> <u>id.</u> at 16.)

Finally, the Superior Court addressed Petitioner's complaint that his sentencing was delayed in violation of Pennsylvania Rule of Criminal Procedure 704(A)(1), which provides that a sentence shall ordinarily be imposed within ninety (90) days of conviction.  (<u>See</u> <u>id.</u> at 24.) (citing Pa. R. Crim. P. 704(A)(1)).  The Superior Court found:

> no abuse of discretion by the trial court in concluding that [Petitioner's] sentencing was delayed for good cause. [Petitioner's] sentencing date was scheduled at a time when our nation was just beginning to grapple with a global pandemic caused by COVID-19. Emergency measures dictated that all sentencing be deferred until adequate and appropriate safety measures could be implemented for inmates as well as for court staff and personnel.

(<u>Id.</u> at 28.)  Thus, the Superior Court held that this issue warranted no relief.  (<u>See</u> <u>id.</u>)  On November 2, 2021, the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of an Appeal.  (<u>See</u> Doc. No. 53 at 5.)

8.  The Instant Habeas Petition

On November 16, 2021, Petitioner filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  (Doc. No. 1.)

---

[14] In support of this argument, Petitioner points to remarks made in frustration by the trial court due to Petitioner's repeated questions, as described more fully <u>infra</u>.

At the outset of the Petition, Petitioner argues that the Superior Court erred when finding that certain claims were waived under Pennsylvania Rule of Appellate Procedure 302(a).  (See Doc. No. 1-2 at 9-10.)  Petitioner contends that an exception should apply in his case to the general rule that an issue not raised at the trial level cannot be raised for appellate review.  (See id.) Petitioner asserts that under Commonwealth v. Hammer, he qualifies for an exception to this rule because the trial court allegedly demonstrated inappropriate advocacy.  (See id.) (citing Commonwealth v. Hammer, 494 A.2d 1054 (Pa. 1985) (holding that an exception to the waiver doctrine exists in cases where the trial court displayed judicial impropriety)).

In support of his claim that the trial court engaged in impropriety, Petitioner notes the following remarks by the trial court:

| | |
|---|---|
| Trial Court: | And I am the most patient person in the world, so I can't even believe I am yelling, but you're driving me insane. |
| Petitioner: | Well your honor— |
| Trial Court: | I can't say the same thing three times. |
| Petitioner: | Your honor, I do not want to keep on your bad side so— |
| Trial Court: | I don't have a bad side. |
| Petitioner: | Well, I mean you – you yelling. |
| Trial Court: | I'm yelling. |
| Petitioner: | So I don't want you to be yelling. That's your bad side. If you yelling— |
| Trial Court: | Do you know what? |
| Petitioner: | That's your bad side. |
| Trial Court: | Get used to it. You should come to my house, I'm yelling all the time. |

(Doc. No. 1-1 at 2-3.)  The next day, the trial court apologized for "losing her temper" and stated:

> I want to start off the morning by apologizing for losing my temper. I shouldn't yell. I was frustrated yesterday, and I can do better than that. I am, I think, well-known for having the patience of Job, and yesterday I just lost it. Having said that, [Petitioner], when I make a decision, it's over. I tried to explain to you at least three times how we're going to have to deal with these photographs, and you didn't want to listen.

(Id. at 3-4.) Petitioner maintains that following this conversation, he felt it was futile to object and preserve his issues for appellate review due to the "judicial intemperance" of the trial court. (See Doc. No. 1-2 at 9-10.)

In the main body of his Petition, Petitioner next raises six grounds for relief.[15] (Doc. No. 1.) Each ground will be described in turn. First, Petitioner argues that the trial court erred in not suppressing Petitioner's interview with police, as well as his phone records. (See id. at 13-18.) In particular, Petitioner argues that "he didn't hear the full rights . . . and therefore, he didn't properly understand and thus waive his Miranda rights and his statement at the police station [including any information regarding his phone] should have been suppressed." (Doc. No. 1-2 at 13.) Petitioner argues that the Court should look at the totality of the circumstances surrounding his Miranda warnings, noting that it was raining, cold, and dark on the side of a highway when he was verbally given his Miranda warnings. (Id. at 17.) He also contends that the information on his phone shown to officers during the interview should have been suppressed as the fruit of the poisonous tree. (See id.) For these reasons, he asserts that habeas relief is warranted because the trial court should have granted the Motion to Suppress. (See id. at 13-18.)

Second, Petitioner argues that habeas relief should be granted because he was denied a fair trial as a result of security officers being positioned near him during the jury trial. (See id. at 42-

---

[15] Petitioner's grounds for relief in his Habeas Petition generally mirror the arguments raised on post-trial motion and on appeal to the Pennsylvania Superior Court. (See Doc. Nos. 19-1, 19-2.)

50.)  At trial, Petitioner objected to the presence of the security officers.  (See Doc. No. 53 at 14.)

In his Habeas Petition, he takes issue with the reasons given by the trial court on the record

supporting the continued presence of the officers.  (See Doc. No. 1-2 at 42.)  When asked by

Petitioner why there were officers near him and not the prosecutor, the trial court responded:

> Trial Court:  I think the response is, Number 1, [the prosecutor] is not charged with a crime.
>
> Petitioner:  Right.
>
> Trial Court:  Nor is [the police witness].  Neither of them are incarcerated, in the custody of Lehigh County Jail.  Number 2, the sheriffs are responsible for the safety of the courtroom, and they make decisions as to how they're going to man the courtroom, where they're going to station the deputies.
>
> . . .
>
> I think that generally folks coming from the street would expect there to be security in a courtroom in a criminal case. You're not singled out. There are deputies in every courtroom, whether it's just a regular miscellaneous day or juvenile court and particularly for trial.  So, your objection is on the record. I disagree with your perception. And you know, unfortunately, having security is the cost of doing business in a courthouse.

(Doc. No. 1-1 at 67-68.)  The trial court supplemented its reasoning as to the presence of security

officers in an opinion following Petitioner's post-trial motion:

> Moreover, the Court would note that the Sheriff's Department was on alert during this trial regarding the safety of the courtroom due to [Petitioner]'s own actions that flagged him as a safety risk. While [Petitioner] was awaiting trial in in the Lehigh County Jail, he was charged with Felony Aggravated Assault for allegedly attacking a correctional officer. The case is currently awaiting trial before this Court and is unresolved at the time of this Opinion.

(Doc. No 19-1 at 12.)  Petitioner contends that was reasoning was fabricated and not the "true

reason" as stated on the record at trial.  (Doc. No. 1-2 at 46.)

Third, Petitioner asserts that he was prejudiced by the trial court's remarks about the prosecutor's character. (<u>See</u> Doc. No. 1-2 at 20.) Specifically, Petitioner argues that on two occasions, the trial court made comments about the prosecutor while instructing the jury not to carry out individual investigation of the case on the internet. (<u>See</u> <u>id.</u>) The trial court remarked:

> I mentioned before you may want to know where [the prosecutor] went to law school. You google that and you get to someplace you shouldn't be. Not that there's anything nefarious about [the prosecutor], but it may take you to some piece of information about this case that is true or not or you should know or not or influences you in some way, so stay off the computer.

(<u>Id.</u>) Later on, when instructing the jury not to view any media reporting about the trial, the court stated:

> And so while I haven't seen anyone [from the media] here, it sometimes happens that they will call someone later this afternoon, 'hey, [the prosecutor], could you tell me what happened in court today?' and not that she would ever mislead anyone, but I think it is a pretty poor way of doing reporting because then it is based on what one person tells them and then perhaps how they even interpret it.

(<u>Id.</u> at 21.) Thus, Petitioner argues that habeas relief is warranted because he was prejudiced by the trial court's comments on what he labels as the credibility of the prosecutor. (<u>See</u> <u>id.</u> at 23-24.)

Fourth, Petitioner asserts that habeas relief should be granted because the trial court abused its discretion when denying Petitioner the right to "show reasonable doubt." (<u>Id.</u> at 24-32.) Petitioner argues that he was denied the right to cast doubt upon whether a burglary occurred at South Ruch Street in Lehigh County. (<u>Id.</u> at 24.) He asserts that this precluded him from challenging the prosecution on the first element of this charge of receipt of stolen property: that the property was in fact stolen. (<u>See</u> <u>id.</u>)

For example, Petitioner argues that the trial court's ruling on the relevancy of the following line of questioning prevented him from casting doubt on the first element of the offense. (<u>See</u> <u>id.</u>)

In this interaction, Petitioner cross-examined the victim of the theft about the necessary repairs to his home following the break-in, and the prosecutor objected as to relevancy:

| | |
|---|---|
| Petitioner: | So the total was how much for all of this? |
| Witness: | It looks like all said and done for the door was $1500.51. |
| Petitioner: | Labor, painting? |
| Witness: | Yep. |
| . . . | |
| Petitioner: | Okay. And $221.70 for the board to be put up prior to this being actually done? |
| Witness: | Yes. |
| Petitioner: | So to fix a little window, a $60 window? |
| Prosecutor: | Your honor, at this point I'm going to object. I don't see what the relevance is to the receiving stolen property charge. |
| The Court: | I'm not sure either. [Petitioner], relevance? |
| Petitioner: | We're—we're going to the credibility of the witness, Your Honor. He said it was a- it was a burglary that was broken into. |
| The Court: | Right. |
| Petitioner: | And we're—we're dealing with a door that I'm a handyman. I'm a specialist. I went to school. And I know that this window you can get anywhere at Walmart for $670 and put it in. |
| The Court: | Okay. |
| . . . | |
| The Court: | Again, what does this have to do with receiving stolen property? |

> Petitioner:    Credibility, Your Honor. The Commonwealth has to prove that the property was actually stolen, so if we're—we're going to the credibility to determine if this house was really burglarized and the so-called evidence was really stolen.
>
> Trial Court:    Okay. Your objection is sustained, [prosecutor].

(Doc. No. 1-1 at 21-22.)  Petitioner asserts that such a ruling denied him the ability to call into question the credibility of the Commonwealth's witnesses.  (Id. at 32.)

Fifth, Petitioner asserts that the trial court showed unfairness and partiality towards the prosecution through her remarks at trial.  (See id. at 32.)  Specifically, Petitioner points to a "campaign of interruption" to "hinder [his] case" including comments by the trial court during his cross-examination of a witness for the Commonwealth.  (See id.)  Following Petitioner's line of cross-examination, the trial court interjected:

> Trial Court:    Again, we'll shorten this up. I believe the process is police send things out to samples out to the Pennsylvania State Police Crime Lab. The first step is the serology lab to determine if there is any kind of substance that can be tested and to determine whether or not there is enough of that substance that they can do some testing to determine sort of what it is, and then they send it out if they find that there's enough material to be tested, they then send it out to the DNA lab. And I'll tell you why I know this. Because I've been a judge for, I'm in my 17th year, and I worked in the system for another 16 years. So this is not expert testimony. It's just an effort to sort of explain why there are a few pieces of paper to the Pennsylvania State Police Crime Lab Report.  How did I do? [sic]
>
> Witness:    Better than I could have, your honor.

(Id. at 14.)  Based on this interaction, Petitioner argues that the judge testified about procedures employed by a Commonwealth witness and "stop[ed] Petitioner from questioning the witness and . . . answering questions."  (Id.)

Sixth, Petitioner argues that habeas relief should be granted because the trial court denied Petitioner the right to support his testimony with certain photographs and documents. (See Doc. No. 1-2 at 39-40.) In particular, he argues that the trial court inappropriately excluded documents as irrelevant which pertained to the MOVE organization, the activities of the police in 1978 and 1985, the sentencing of the murderer of the Central Park jogger, and the 1991 Rodney King beating. (See id.) Petitioner argues that these incidences "shaped [his] fear of police." (Id. at 40.) The photographs excluded by the trial court depicted Petitioner helping ex-offenders at events. (See id.) Petitioner argues these photographs were relevant because they show how he met individuals involved in criminal activity. (See id.) Petitioner argues that the exclusion of these photographs and documents was an abuse of discretion that supports the grant of a new trial. (See id. at 42.)

On April 8, 2022, Respondents filed an Answer in which they asserted that Petitioners' claims are either meritless or procedurally defaulted. (Doc. No. 19.) On April 28, 2022, Petitioner filed a Response in support of his Petition. (Doc. No. 20.)

On June 22, 2024, the United States Magistrate Judge issued a Report and Recommendation which recommended that the Petition be denied and dismissed. (See Doc. No. 53 at 2.) On February 5, 2024, Petitioner filed his Objections to the R&R (the "Objections") (Doc. No. 54), which are presently before this Court for de novo consideration.

## III.   STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is permitted to designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief. Any party may file objections in response to the magistrate judge's report and recommendation. See § 636(b)(1)(C). Whether or not an objection is made, a

district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. "The [district] judge may also receive further evidence to recommit the matter to the magistrate judge with further instructions." Id. "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also § 636(b).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation. Under the Rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012). Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." § 636(b)(1)(C).

De novo review is non-deferential and generally permits the district court to conduct anew an "independent review" of the entire matter. Salve Regina College v. Russell, 499 U.S. 225, 238 (1991). "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 477 U.S. 667, 676 (1980)).

## IV.   ANALYSIS

As noted above, Petitioner contends in his Habeas Petition that:  (1) the trial court erred in not suppressing Petitioner's interview with police, as well as his phone records; (2) the trial court denied Petitioner a fair trial through the positioning of Sheriffs in the courtroom; (3) the trial court

prejudiced Petitioner through its remarks at trial about the prosecutor's character; (4) the trial court abused its discretion in denying Petitioner the right to "show reasonable doubt;" (5) the trial court denied Petitioner a fair trial because remarks made by the trial judge showed partiality; and (6) the trial court improperly denied Petitioner the right to use evidence to support his testimony. (See Doc. No. 1.)

The Magistrate Judge recommended the Petition be denied, finding that these claims were either meritless or procedurally defaulted.[16] (See Doc. No. 53 at 1.) In Petitioner's Objections to the R&R, he contends that the Magistrate Judge's resolution of his claims is incorrect.[17] (Doc. No. 54.)

In his Report and Recommendation, United States Magistrate Judge Richard Lloret first addressed the claims which he reviewed on the merits, and second addressed the claims which he found were procedurally defaulted.[18] (See Doc. No. 53.) The findings of the Magistrate Judge

---

[16] Claims which a state court does not review on the merits for a reason that is based on an "independent and adequate" state law ground are procedurally defaulted for purposes of federal habeas review. See Coleman v. Thompson, 501 U.S. 722, 729 (1991). These claims cannot support habeas relief for a petitioner unless the petitioner can show "cause and prejudice" for the procedural default. The grounds for procedural default are discussed more fully infra.

[17] Many of Petitioner's objections merely restate arguments raised in his Habeas Petition. (See Doc. No. 1.) Objections which "merely rehash an argument presented to and considered by a magistrate judge are not entitled to de novo review." Morgan v. Astrue, No. 08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009) (citing Edmond v. Collins, 8 F.3d 290, 293 n.7 (5th Cir. 1993)) (collecting cases). In any event, the Court will address Petitioner's objections on the merits and, in four instances, for procedural default.

[18] The Magistrate Judge first addressed Petitioner's claims on the merits, and second addressed Petitioner's defaulted claims. (Doc. No. 53.) In his Objections, Petitioner chose to reverse the order of the Magistrate Judge in the R&R, and address the procedurally defaulted claims first, and the claims reviewed on the merits second. (Doc. No. 54.) For clarity's sake, the Court will address Petitioner's claims in the order that the Magistrate Judge addressed them.

will be discussed in that order along with the Objections of Petitioner and this Court's rulings on

the Objections.

    **A.** **The Magistrate Judge Correctly Found that Petitioner's Claim Regarding the Denial of his Motion to Suppress is without Merit**

        1.  The Magistrate Judge Concluded that Petitioner's Claim Concerning the Trial Court's Denial of his Motion to Suppress is Without Merit

First, the Magistrate Judge found that Petitioner's claim that the trial court erred when

denying his Motion to Suppress is without merit.  (See id. at 9.)  In his Habeas Petition, Petitioner

argued that:

> the trial court erred by denying his Motion to Suppress a videotaped interview with
> police officers and his phone records because he did not fully hear the Miranda
> warnings given to him by officers, nor did he fully understand them because he
> thought he waived all rights by virtue of being on parole, and thus, he did not give
> a knowing and voluntary waiver of his Miranda rights.

(Id.) (citing Doc. No. 1 at 13-18).

The Magistrate Judge explained that the Antiterrorism and Effective Death Penalty Act

("AEDPA") governs federal habeas review of state court judgments.  (See id. at 6.)  Under AEDPA,

when reviewing a claim that has been adjudicated on the merits by a state court, a federal court

may grant a petition for habeas relief only if: (1) the state court's adjudication of the claim "resulted

in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication

"resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  (Id.) (citing 28 U.S.C. § 2254(d)(1)-(2)).

The Magistrate Judge found that when the trial court denied Petitioner's Motion to

Suppress, and the Superior Court of Pennsylvania affirmed the denial of the Motion, these

decisions were not 1) contrary to, or involving an unreasonable application of clearly established

federal law, 2) nor did they result in a decision that was based on an unreasonable determination of facts based on the evidence presented in state court.  (See Doc. No. 53 at 12-14) (citing 28 U.S.C. § 2254(d)(1)-(2)).  First, the Magistrate Judge found that "the Superior Court's decision was not contrary to clearly established federal law" because "a run of the mill state-court decision applying the correct legal rule . . . [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  (Id. at 12) (citing Williams v. Taylor, 529 U.S. 362, 406 (2000)).

Second, the Magistrate Judge concluded that "a review of the record supports the conclusion that the Superior Court did not unreasonably apply Miranda [federal law] in affirming the trial court's decision."  (Id. at 13.)  The trial court found the police officer's testimony at the suppression hearing was credible, and the Magistrate Judge found that "Petitioner has failed to present any clear and convincing evidence to rebut the factual determinations of the trial court and Superior Court of Pennsylvania."  (Id. at 13-14.)  Thus, the Magistrate Judge recommended that Petitioner's first claim be denied and dismissed as meritless.  (See id.)

2. Petitioner Asserts that the Magistrate Judge Erred by Finding that the Trial Court Appropriately Denied Petitioner's Motion to Suppress the Videotaped Confession

In his Written Objections, Petitioner argues that the trial court erred when denying his Motion to Suppress the Videotaped Confession.  (See Doc. No. 54 at 17.)  Petitioner notes that,

while the Magistrate Judge did an extensive discussion on this issue, no place does the Magistrate address the factors [Petitioner] mentioned in his writ, such as the weather conditions, the time of day, being on the side of the highway, and two-part interrogation that was done first on the side of the road and then at the police station.

(Id.)  Petitioner further argues that the Magistrate Judge did not address the argument in his habeas petition concerning his Miranda rights: "about never dealing with the rights being given without signing anything."  (Id.)  Generally, Petitioner notes that "the Magistrate [Judge] merely rubber stamped everybody else['s] view and didn't assess the issues [Petitioner] raised in [his] Writ . . ."

28

(<u>Id.</u>)  Accordingly, Petitioner argues that the videotaped confession taken at police headquarters should have been suppressed, and a new trial should be granted on this issue.  (<u>Id.</u>)

      3.   The Magistrate Judge Correctly Found that Petitioner's Claim Concerning the Denial of his Motion to Suppress is Without Merit

      Petitioner's claim regarding the denial of the Motion to Suppress is without merit.  As set forth above, under AEDPA, when a federal court assesses a claim that has been adjudicated on the merits by a state court, habeas relief may only be granted if: 1) the state court's decision was contrary to or an unreasonable application of federal law, or 2) the decision was based on an unreasonable determination of the facts adduced in state court.  (<u>See</u> <u>id.</u>) (citing 28 U.S.C. § 2254(d)(1)-(2)).

      Here, Petitioner filed a Motion to Suppress his videotaped interview with police officers and information gleaned from his phone during the interview, claiming that he did not fully hear or understand the <u>Miranda</u> warnings from the officers at the Dunkin Donuts parking lot where he was arrested.  (<u>See</u> Doc. No. 53 at 9) (citing Doc. No. 1 at 13-18.)  The trial court held a pre-trial evidentiary hearing where two officers involved in the arrest and interview testified.  (<u>See</u> Doc. No. 19-1 at 8.)  At the hearing, both officers testified that they repeatedly informed Petitioner of his <u>Miranda</u> rights, and Petitioner repeatedly affirmed that he understood his rights and wished to speak to police.  (<u>See</u> Doc. No. 19-2 at 7-13.)  Following the hearing, the court denied Petitioner's Motion to Suppress, finding that Petitioner was properly read his <u>Miranda</u> rights, he knowingly, voluntarily, and intelligently waived his rights, and his testimony that he did not hear his rights under <u>Miranda</u> was contradicted by the police witnesses' testimony.  (<u>See</u> <u>id.</u>)  On appeal, the

Pennsylvania Superior Court affirmed.[19]   (See Doc. No. 19-2 at 13.)  Thus, the trial court and Pennsylvania Superior Court both adjudicated Petitioner's claim on the merits.

Here, neither of the decisions of the trial or appellate courts in denying Petitioner's Motion to Suppress warrant habeas relief.  Neither decision was "1) contrary to, or involv[ing] an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States" or "2) result[ing] in a decision that was based on an unreasonable determination of facts based on the evidence presented in state court."  28 U.S.C. § 2254(d)(1)-(2).

First, the decision to deny Petitioner's Motion to Suppress was not contrary to clearly established federal law.  As the United States Supreme Court stated in Williams v. Taylor, "a run of the mill state court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.'"  529 U.S. 362, 406 (2000).  Here, the state courts properly applied the framework set forth in Miranda.  Such decisions cannot be said to be "contrary to" or "involving an unreasonable application of clearly established federal law."  See id.; see also Cavitt v. Saba, 57 F. Supp. 3d 81, 92 (D. Mass. 2014) (finding the petitioner's claim that the trial court erred in denying his motion to suppress did not

---

[19] As noted previously, the Pennsylvania Superior Court stated:

> [g]iven the testimony of both [police witnesses] regarding the Miranda warnings they provided to [Petitioner], and [Petitioner's] repeated indications to [police witnesses] that he was aware of his rights and understood them, we conclude that the suppression record amply supports the trial court's determination that [Petitioner] knowingly, intelligently, and voluntarily waived his Miranda rights.

(Doc. No. 19-2 at 13.)

warrant habeas relief and the decision of the trial court was not contrary to clearly established federal law).

Second, the decision of the trial and appellate courts did not result in a decision that was based on an unreasonable determination of facts based on evidence presented in state court. 28 U.S.C. § 2254(d)(1)-(2). As noted by the Magistrate Judge, a review of the record supports the conclusion that the decisions of the state trial and appellate courts were based on reasonable determinations of facts based on the evidence at trial. (See Doc. No. 19-2 at 6-13.) For example, the Pennsylvania Superior Court's analysis of Petitioner's claim that he did not hear or fully understand his Miranda rights shows the state court's reasonable determination of the facts at issue:

> When the detective asked [Petitioner] to confirm that he was still willing to speak with police, [Petitioner] responded, "absolutely." During the interview, [Petitioner] consented to showing the detectives certain information on his cell phone. At no point during the interview did [Petitioner] indicate that he wanted to stop talking to police. At some point the audio was turned off at [Petitioner]'s request; and, when the audio was turned back on, [the Detective] again reminded [Petitioner] that he did not have to speak to police, that he had the right to remain silent and to speak with an attorney, and that all the rights previously explained to him still applied. [Petitioner] again indicated that he understood, and still consented to speak to the police.

(Doc. No. 19-2 at 12-13.)

Moreover, unless the Court is presented with clear and convincing evidence to the contrary, a federal court must defer to the credibility determinations of the state court. See Miller v. Fenton, 474 U.S. 104, 114 (1985). Here, the trial court made credibility determinations regarding the police officers' testimony and found those witnesses to be credible. (See Doc. No. 19-2 at 9.) Following a suppression hearing, the trial court noted that:

> It seems apparent to this court that [Petitioner] began to offer spontaneous explanations and the police orally provided Miranda (which he acknowledges) to protect any evidence rather than leave the statements open to scrutiny. The police practiced similar procedure when they obtained a search warrant even though they had [Petitioner's] permission to search the vehicle.

31

(Id.)

Thus, Petitioner's claim that his Motion to Suppress was inappropriately denied is without merit.   Petitioner has not shown that the decisions of the trial court and Pennsylvania Superior Court are either 1) contrary to, or involving an unreasonable application of federal law, or 2) resulted in a decision that was based on an unreasonable determination of facts based on evidence presented in state court.  Accordingly, habeas relief on Petitioner's first claim is not warranted.

### B.  The Magistrate Judge Correctly Found that Petitioner's Claim Based on the Presence of Courtroom Security is Without Merit

1.  The Magistrate Judge Concluded that Petitioner's Claim that He was Denied a Fair Trial due to the Presence of Courtroom Security is Without Merit

Next, the Magistrate Judge found that Petitioner's claim that he was denied a fair trial due to the presence of courtroom security was without merit.  (See Doc. No. 53 at 14.)  Petitioner contended that "he was denied a fair trial due to the presence of uniformed sheriff's deputies beside him in the courtroom."  (Id.) (citing Doc. No. 1 at 42.)  Petitioner raised this issue on direct appeal, and it was adjudicated on the merits by the Pennsylvania Superior Court, so he preserved the issue for review on the merits by the United States Magistrate Judge.  (See id.)

Relying on the United States Supreme Court's holding in Holbrook v. Flynn, the Magistrate Judge stated that "'conspicuous, or at least noticeable presence of guards in a courtroom during trial' should not be presumed to be inherently prejudicial to a defendant as to deny the defendant of his right to a fair trial."  (Id.) (citing Holbrook v. Flynn, 475 U.S. 560, 567 (1986)).  In addition, the Magistrate Judge set forth the standard for federal review of a constitutional challenge to security in a state court trial.  (Id. at 15.)  The federal court must:

> look at the scene presented to jurors and determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a fair

> trial; if the challenged practice is not found inherently prejudicial and if the
> defendant fails to show actual prejudice, the inquiry is over.

(Id.)  Further, the Magistrate Judge added that the United States Supreme Court has held that there are "some exceptional circumstances that would in fact deem physical restraint as a fair and reasonable way to handle a situation."  (Id.) (citing Illinois v. Allen, 397 U.S. 337, 344 (1970)).

Here, the Magistrate Judge noted that, on direct appeal, the Pennsylvania Superior Court found that Petitioner's claim regarding the security officers was meritless.  The Magistrate Judge quoted the Superior Court:

> Petitioner does not allege that he was handcuffed or shackled in the jury's presence.
> Instead, he complains only that uniformed sheriff's deputies were near him at all
> times throughout the trial. Our research has revealed no case law that would
> prohibit a defendant from merely being flanked by uniformed deputies throughout
> trial.

(Id. at 16.)  Thus, the Superior Court concluded that the "exceptional circumstances" of Petitioner having been charged with attacking a correctional officer warranted the presence of sheriff's deputies near Petitioner during the trial, and for this reason Petitioner's claim was meritless.  (Id. at 17.)

The Magistrate Judge found that the Superior Court's conclusion was neither contrary to clearly established federal law, nor an unreasonable determination of facts. (See id.) (citing 28 U.S.C. § 2254(d)(1)-(2)).  First, the Magistrate Judge found that the Superior Court's conclusion that Petitioner claim was meritless was not contrary to federal law under Holbrook v. Flynn.  (See id. at 17.)  Petitioner "failed to establish any way in which he was prejudiced by the presence of security in the courtroom" as required by Holbrook.  (Id. at 18.)  Thus, the Superior Court's conclusion was consistent with federal law.  (See id.)  Second, there was not an unreasonable determination of facts by the state court.  (See id. at 18.)  As discussed by the Magistrate Judge, "even if there was some slight degree of prejudice, there existed an exceptional circumstance that

warranted the presence of deputies in the courtroom—Petitioner was charged with attacking a correctional officer, flagging him as a safety risk." (Id.) Therefore, the Magistrate Judge found that habeas relief was not warranted on Petitioner's second claim because it was without merit. (See id.)

> 2.   Petitioner Asserts that the Magistrate Judge Erred by Failing to Properly View the Issue of Security Personnel in the Court

In his Written Objections, Petitioner argues that the trial judge offered a "false" reason to excuse her improper use of armed deputies in the courtroom surrounding Petitioner at trial. (Doc. No. 54 at 16.) Petitioner asserts that the judge stated the "real reason" on the record—because "[Petitioner] was charged with a crime and because [Petitioner] was in prison." (Id.) Petitioner argues that, when he challenged this issue on appeal, the trial judge "concocted the assault on guard story to support her decision which is contradicted in the record." (Id.) Petitioner contends that the "fabricated reason" was the one provided to the Pennsylvania Superior Court, that is, Petitioner's charge of Felony Aggravated Assault on an Officer. (See id.) Petitioner alleges that the Magistrate Judge did not address this argument in the Report and Recommendation. (See id. at 16-17.)

In addition, Petitioner argues that the Magistrate Judge did not follow the appropriate analysis set forth in Holbrook v. Flynn, 475 U.S. 560 (1986). (Id. at 16.) Petitioner argues that his situation was "worse" than the one in Holbrook as "there was more security than theirs in mine." (Id.) Thus, Petitioner objects and argues that the Magistrate Judge was incorrect in his assessment of this issue. (Id. at 16-17.)

3.   The Magistrate Judge Correctly Found that Petitioner's Claim Based
on the Presence of Courtroom Security is Without Merit

The Magistrate Judge correctly found that this claim is without merit, and Petitioner's

objections concerning the presence of security officers will be overruled.  "Central to the right to

a fair trial, guaranteed by the Sixth and Fourteenth Amendments [to the United States

Constitution], is the principle that 'one accused of a crime is entitled to have his guilt or innocence

determined solely on the basis of the evidence introduced at trial, and not on grounds of official

suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'"

Holbrook, 475 U.S. at 567 (quoting Taylor v. Kentucky, 436 U.S. 478, 485 (1978)).  However, the

guarantees of the Sixth and Fourteenth Amendments do not require "that every practice tending to

single out the accused from everyone else in the courtroom must be struck down."  Id. at 567.  For

example, in Holbrook, the United States Supreme Court held that "conspicuous, or at least

noticeable, presence of guards in a courtroom during trial" is not inherently prejudicial in all cases.

Id. at 568-69.  Further, courts have held that exceptional circumstances may warrant physical

restraint of a defendant as "reasonably necessary to maintain order."  Commonwealth v. Jasper,

610 A.2d 949, 955 (Pa. 1992); see also Allen, 397 U.S. at 344 (holding that physical restraint is

sometimes necessary in exceptional cases to maintain order when presented with a particularly

"obstreperous" defendant).

As set forth above, when reviewing a challenge to the constitutionality of security in a state

court trial, a federal court must "look at the scene presented to jurors and determine whether what

they saw was so inherently prejudicial as to pose an unacceptable threat to defendant's right to a

fair trial; if the challenged practice is not found inherently prejudicial and if the defendant fails to

show actual prejudice, the inquiry is over."  Holbrook, 475 U.S. at 572.

Here, following trial, Petitioner raised in his appeal to the Pennsylvania Superior Court that the positioning of sheriffs in close proximity deprived him of a fair trial. (See Doc. No. 19-1 at 11.) Petitioner argued that the "close proximity of uniformed deputies would cause the jury to perceive him as dangerous." (Doc. No. 19-2 at 23.) In the opinion following Petitioner's notice of appeal, the trial court stated that this issue was addressed on the record during trial. (Id. at 11.) The trial court added:

> [Petitioner] was not unreasonably restrained in front of the jury. The Court did not permit either the Commonwealth or the [Petitioner] to roam around the courtroom for general safety concerns. The Court informed [Petitioner] during trial that the Sheriff's Department was responsible for the safety of the courtroom and placement of deputies. [Petitioner] cannot demonstrate prejudice as all parties, including the jury, felt more comfortable with security in the courtroom. The Court considered the positioning of the sheriffs to be discrete. The deputies did not draw undue attention to the [Petitioner] as they were sitting throughout the courtroom.
>
> Moreover, the Court would note that the Sheriff's department was on alert during this trial regarding the safety of the courtroom due to [Petitioner]'s own actions that flagged him as a safety risk. While [Petitioner] was awaiting trial in in the Lehigh County Jail he was charged with Felony Aggravated Assault for allegedly attacking a correctional officer. The case is currently awaiting trial before this Court and is unresolved at the time of this Opinion. See CP-39-CR-3401-2019.

(Id. at 12.) The Superior Court affirmed the trial court's findings, holding that his claim merits no relief.[20] (See Doc. No. 19-2 at 24.)

---

[20] As noted by the Superior Court,

> [Petitioner] complains only that uniformed sheriff's deputies were near him at all times throughout the trial. Our research has revealed no case law that would prohibit a defendant from merely being flanked by uniformed deputies throughout trial. Moreover, the trial court explained that Petitioner "was charged with Felony Aggravated Assault for allegedly attacking a correctional officer." Thus, exceptional circumstances clearly warranted the presence of sheriff's deputies near Williams throughout the trial.

(Doc. No. 19-2 at 23.)

Petitioner has failed to show three things: (1) that the Superior Court's decision was "contrary to" clearly established federal law, (2) that the Superior Court's decision involved an unreasonable determination of the facts at trial, and (3) that "actual prejudice" resulted due to the use of security officers at trial.[21]   As a result, his objections concerning the presence of security

---

[21] In a recent Third Circuit decision, Lacombe v. Warden James T. Vaughn Corr. Ctr., No. 21-1886, 2024 WL 998028 (3d Cir. Mar. 8, 2024), the court stated as follows:

> Under Brecht, which adds a harmless-error element to our habeas analysis, we must ask two questions for each claim at issue. First, does the claim concern a trial error—meaning an error that "occur[s] during the presentation of the case" to the trier of fact and can "be quantitatively assessed in the context of other evidence presented in order to determine" harmlessness—or a structural defect, which is not susceptible to harmless-error analysis and likely entitles the petitioner to relief? Brecht, 507 U.S. at 629–30, 113 S.Ct. 1710 (alteration in original) (quoting Arizona v. Fulminante, 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Second, if the claim concerns a trial error, did that error result in "actual prejudice" to the petitioner? Id. at 637, 113 S.Ct. 1710 (quoting Lane, 474 U.S. at 449, 106 S.Ct. 725); see Fry v. Pliler, 551 U.S. 112, 121–22, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007).

> To satisfy his burden of proving "actual prejudice," a petitioner must show that the error "had [a] substantial and injurious effect or influence in determining" the relevant outcome. Brecht, 507 U.S. at 637, 113 S.Ct. 1710 (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). Absent that showing, we will not remedy a claim of trial error on collateral review. See id. at 637–38, 113 S.Ct. 1710. If the petitioner can make the requisite showing, however, Brecht presents no barrier to relief. Id.; see Brown, 142 S. Ct. at 1517, 1520.

> The upshot is that, to prevail on a habeas petition, a prisoner asserting trial error must establish both error under AEDPA and prejudice under Brecht. Brown, 142 S. Ct. at 1517, 1520; see Freeman v. Superintendent Fayette SCI, 62 F. 4th 789, 802 (3d Cir. 2023); Mathias v. Superintendent Frackville SCI, 876 F.3d 462, 475 (3d Cir. 2017). Failing to establish either one will preclude habeas relief, so "[w]hen a federal court determines . . . that a petitioner has failed to carry his burden under Brecht, that conclusion . . . obviates the need for . . . a separate AEDPA inquiry [and] relief must be denied." Brown, 142 S. Ct. at 1528 (emphasis omitted).

personnel at his trial are without merit and his requested relief is not warranted for several reasons. First, Petitioner's objection concerning a fabricated reason for the presence of security in the courtroom is misplaced.  The trial court provided an opportunity for Petitioner to preserve his objection to the presence of security in the courtroom on the record.  (See Doc. No. 1-1 at 67-68.) As set forth previously, following his objection, the trial court responded,

> [the prosecutor] is not charged with a crime . . . Nor is [the police witness].  Neither of them are incarcerated, in the custody of Lehigh County Jail.  Number 2, the sheriffs are responsible for the safety of the courtroom, and they make decisions as to how they're going to man the courtroom, where they're going to station the deputies . . . So, your objection is on the record. I disagree with your perception.

(Id.)  Thus, the trial court provided reasons on the record on her decision to overrule Petitioner's objection and the continued presence of security personnel at trial.  (See id.)  In her opinion following Petitioner's Notice of Appeal, the trial court supplemented her reasoning on the record by noting that Petitioner was "flagged as a safety risk" because he was "charged with Felony Aggravated Assault for allegedly attacking a correctional officer." (Doc. No 19-1 at 12.)  This was not a "false" or "concocted" reason.  Accordingly, this objection does not warrant habeas relief.

Second, Petitioner's argument that the facts in his case are "worse" than those in Holbrook is inaccurate.  In Holbrook, petitioner objected to the presence of four uniformed state troopers who were "sitting quietly" at the defendants' trial.  Holbrook, 475 U.S. at 571.  The Court held that the presence of those officers was not unduly prejudicial to the defendants.  See id. at 572.  "Four troopers are unlikely to have been taken as a sign of anything other than a normal official concern for the safety and order of the proceedings."  Id. at 571.  Here, Petitioner objects to the presence

---

Lacombe v. Warden James T. Vaughn Corr. Ctr., No. 21-1886, 2024 WL 998028, at *5 (3d Cir. Mar. 8, 2024).  The issue raised here by Petitioner regarding the security guards involves a trial error.

of two security officers who sat near him during trial.  Thus, despite Petitioner's arguments to the

contrary, the facts in his case involved less security officers than those present in <u>Holbrook</u>.

Here, the Court has "look[ed] at the scene presented to jurors" and determined that what

they saw—two or three security officers seated near Petitioner—was not inherently prejudicial nor

did it "pose an unacceptable threat to Petitioner's right to a fair trial." <u>Id.</u> at 572.  As noted by the

Court in <u>Holbrook</u>, "our society has become inured to the presence of armed guards in most public

places; they are doubtless taken for granted." <u>Id.</u> at 569.  As in <u>Holbrook</u>, nothing about the

presence of security officers at trial was inherently prejudicial, nor has Petitioner shown actual

prejudice as a result of their presence.  In addition, Petitioner has not shown any error in the state

courts' decisions under 28 U.S.C. § 2254(d)(1)-(2).  Thus, the Court will not grant habeas relief

based upon Petitioner's claim and subsequent objections to the Report and Recommendation of

the Magistrate Judge.

### C.  The Magistrate Judge Correctly Found that Petitioners Remaining Four Claims are Procedurally Defaulted

    1.  The Magistrate Judge Found that Petitioner's Remaining Four Claims are Procedurally Defaulted and that Petitioner Failed to Establish Cause and Prejudice

        a.  Procedural Default of Petitioner's Four Remaining Claims

Finally, the Magistrate Judge found that Petitioner's four remaining claims,[22] all raising

alleged errors by the trial court, are procedurally defaulted because they were not objected to nor

---

[22] Petitioner's four remaining claims are: (1) the trial court inappropriately commented on the prosecutor's character; (2) the trial court made multiple remarks showing partiality and unfairness; (3) the trial court abused its discretion when denying Petitioner the right to "show reasonable doubt"; and (4) the trial court abused its discretion in excluding certain photographs and documents.  (<u>See</u> Doc. No. 53 at 23-28.)

preserved at trial, even though they were raised in post-trial motions.  (Doc. No. 53 at 18.)  He also found that there was no "cause and prejudice" to overcome the default.  (See id.)

Here, the Pennsylvania Superior Court held that because Petitioner did not object to his four remaining claims at trial, but instead raised them for the first time in a post-trial motion, they are waived under Pennsylvania Rule of Appellate Procedure 302(a), which provides as follows:

Rule 302. Requisites for Reviewable Issue.

(a)  General rule—Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.

(See id. at 18-19) (citing Pa. R. A. P. 302(a)).

The Magistrate Judge held that Petitioner's four remaining claims were procedurally defaulted because they were denied by the Pennsylvania Superior Court under Pennsylvania Rule of Appellate Procedure 302(a).  (See id. at 18.)  As noted by the Magistrate Judge, if a claim is presented to the state courts, but it was denied on an "independent and adequate" state law ground, which in this case was the failure to object at trial to matters arising before the trial judge, that claim is procedurally defaulted.  (See id. at 6) (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991).  And the Third Circuit has held that Pennsylvania Rule of Appellate Procedure 302(a), which provides that "[i]ssues not raised in the lower court are waived" and cannot be raised in the first instance on appeal, is an "independent and adequate" state law ground which bars federal habeas review.  (Id. at 19) (citing Werts v. Vaughn, 228 F.3d 178, 194 (3d Cir. 2000)).  Thus, because the Pennsylvania Superior Court denied Petitioner's four remaining claims based on an "independent and adequate" state law ground—Pennsylvania Rule of Appellate Procedure 302(a)—the Magistrate Judge found that the four claims were procedurally defaulted.  (See id. at 18-19.)

40

b.  Cause and Prejudice to Overcome Default

In addition, the Magistrate Judge concluded that Petitioner failed to establish any "cause of the default and actual prejudice" or show that failure to consider these four remaining claims would result in a "fundamental miscarriage of justice" to overcome the procedural default of his claims.  (Id. at 19.)   Under Coleman v. Thompson, a procedurally defaulted claim cannot provide a basis for federal habeas relief unless the petitioner "shows cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice."  (Id. at 7) (citing Coleman, 501 U.S. at 729).

In his Habeas Petition, Petitioner argued that he established cause and prejudice because "he alleges that any objection he might have made to the trial court's rulings or statements would have fallen on deaf ears, and therefore he was not required to object."  (Id.) (citing Doc. No. 1-2 at 9.)   Relying on Commonwealth v. Hammer, Petitioner argues that the trial court displayed "judicial intemperance" which excused his lack of objections on the record.  (Doc. No. 1-2 at 9) (citing Commonwealth v. Hammer, 494 A.2d 1054 (Pa. 1985) (holding that an exception to the waiver doctrine exists in cases where the trial court displayed judicial impropriety)).  In support of this argument, Petitioner raises a moment during trial where the court, outside the presence of a jury, "admitted that she had lost her patience with Petitioner."  (Doc. No. 53 at 21.)  In admitting that she had "lost her temper," the trial court stated, outside the presence of the jury:

> I tried to explain to you at least three times how we're going to have to deal with these photographs, and you didn't want to listen. I'm asking you, please listen. And when I make a decision, I'm trying to do the right thing. Leave it. We have a record here. If I've made a mistake to your detriment, the Superior Court will figure it out. Understood?

(Id. at 21, n. 15.)

       The Magistrate Judge concluded that Petitioner's case is unlike the one in <u>Hammer</u> where the Pennsylvania Supreme Court permitted appellate review of issues not objected to on the record due to the conduct of the trial court.  <u>Hammer</u>, 494 A.2d at 1063.  In <u>Hammer</u>, the defendant was represented by counsel and the judge questioned witnesses repeatedly, "constituting advocacy of a point of view favoring the prosecution."  <u>Id.</u> at 1058.  Thus, the Pennsylvania Supreme Court held that "we are not inclined to strictly enforce the waiver doctrine in the case of judicial intemperance for counsel cannot veto actions viewed by the judge to be wholly permissible."  <u>Id.</u> at 1060.  Accordingly, in <u>Hammer</u>, the Pennsylvania Supreme Court found that the judge had "overstep[ped] the bounds of propriety in examining witnesses, by exhibiting opinion, bias, or prejudice" so much so that the defendant was deprived of a fair trial.  <u>Id.</u> at 1061.

       Here, the Magistrate Judge noted that, unlike in <u>Hammer</u> where the defendant had counsel and the court questioned witnesses, Petitioner represented himself <u>pro</u> <u>se</u>, and therefore he was "unschooled in the law, and frequently misunderstood or misinterpreted rules of law and rules of procedure."  (Doc. No. 53 at 20.)  Also, unlike the trial judge in <u>Hammer</u> who displayed improper judicial advocacy, the trial court here "did an admirable job of assuring that Petitioner received a fair trial despite his lack of knowledge. She did not, however, exhibit a 'personal bias or prejudice' toward Petitioner." (<u>Id.</u>)  Further, "there is nothing in the judge's statement ('I'm asking you to please listen . . . We have a record here') that suggests Petitioner was not permitted to preserve his objections for the inevitable Superior Court review, and the presence of standby counsel means that Petitioner had the expertise by his side to assure that he properly did so."  (<u>Id.</u> at 22.)  In support of this finding, the Magistrate Judge noted that the performance of Petitioner throughout trial demonstrated that he understood he had the right to object and that he freely chose to represent himself <u>pro</u> <u>se</u>.  (<u>Id.</u> at 21.)

The Magistrate Judge's review of the record demonstrated no "unfair disadvantage" granted to the prosecution or suffered by Petitioner.  (Id.)  The Magistrate Judge also added that, in fact, Petitioner "was given a wide latitude to question all of the Commonwealth's witnesses, including the two victims, whom [Petitioner] all but outrightly accused of staging a ransacking and burglary of their [own] home and committing subsequent insurance fraud."  (Id. at 22-23.) Therefore, the Magistrate Judge concluded that Petitioner failed to establish cause and prejudice to overcome the default of his four remaining claims.  (Id. at 23.)

> 2.  Petitioner Objects to the Magistrate Judge's Analysis of the Procedural Default Doctrine and that his Claims are Procedurally Defaulted

On this point, Petitioner argues that the Magistrate Judge did not conduct an appropriately thorough analysis of whether Pennsylvania Rule of Appellate Procedure is an "adequate" state law ground precluding habeas review.  (Doc. No. 54 at 2.)  Petitioner argues that the Magistrate Judge merely cited Werts v. Vaughn, 228 F.3d 178, 194 (3d Cir. 2000) for the proposition that Pennsylvania Rule of Appellate Procedure 302(a) is an "independent and adequate" state law ground.  (Id.)  Petitioner asserts that the Magistrate Judge failed to fully discuss whether the state procedural rule is "adequate"—that is, whether it was "firmly established and regularly followed at the time of the alleged procedural default."  (Id.) (citing Ford v. Louisiana, 498 U.S. 992 (1991)). Petitioner notes that, to be considered "firmly established and regularly followed," three requirements must be met which the Magistrate Judge did not discuss: "(1) the state procedural rule must speak in unmistakable terms; (2) all state appellate courts must have refused to review the petitioner's claims on the merits; and (3) the state court's refusal in this instance must be consistent with other decisions."  (Id. at 2) (citing Doctor v. Walters, 96 F.3d 675, 683-84 (3d Cir. 1996)).  Petitioner asserts that the Magistrate Judge failed to evaluate his claim based on this framework.  (See id.)

Petitioner concedes that, typically,[23] Pennsylvania Rule of Appellate Procedure 302(a) is "firmly established and regularly followed" state law ground under Third Circuit case law.  See Werts v. Vaughn, 228 F.3d 178, 194 (3d Cir. 2000); see also McLaughlin v. Dist. Att'y Philadelphia, No. 21-2775, 2023 WL 7001836, at *3 (3d Cir. Oct. 24, 2023).  Thus, all three grounds would typically be satisfied.  But he argues that an exception to the general rule is warranted in his case due to the trial court's "judicial intemperance."  (Id. at 3) (citing Com. v. Hammer, 494 A.2d 1054 (Pa. 1985)).  As discussed above, Petitioner supports this argument with an instance, described supra, where the trial court "lost her temper" and said "when I make a decision, it's over.  I tried to explain to you at least three times how we're going to have to deal with these photographs, and you didn't want to listen."  (Doc. No. 1-1 at 3-4.)  From these comments, Petitioner argues that the trial court displayed judicial impropriety, and, as a result, the exception in Hammer should apply to excuse his lack of objections.  (See Doc. No. 54 at 4-6.)

Petitioner also argues that his claims are not waived at all by Pennsylvania Rule of Appellate Procedure 302(a) because he raised these issues in the trial court on post-trial motion, "as directed [by the Pennsylvania Supreme Court] and not for the first time on appeal."  (Id. at 5.) Finally, Petitioner argues that he has demonstrated "cause or prejudice" to excuse the procedural default of his claims.  (Id.)  Consequently, Petitioner argues that none of his claims are waived or procedurally defaulted.  (See id.)  His arguments are not persuasive.

---

[23] Additionally, Petitioner asserts that in some instances, Pennsylvania Rule of Appellate Procedure 302(a) is not a "firmly established and regularly followed" procedural ground due to the exception to waiver carved out in Commonwealth v. Hammer, 494 A.2d 1054, 1060 (Pa. 1985). (Id.)  The "exception to the waiver" Petitioner refers to is the exception to the general rule in Pennsylvania Rule of Appellate Procedure 302(a).  See Hammer, 494 A.2d at 1060.  As noted, this exception permits appellate courts to review claims that were not objected to on the record where "objection would be meaningless" due to "judicial intemperance." Id.

3. The Magistrate Judge Correctly Found that Petitioner's Four Remaining Claims are Procedurally Defaulted and that Petitioner Failed to Establish Cause and Prejudice

  a. The Magistrate Judge Correctly Found that Petitioner's Claims are Procedurally Defaulted

After a careful de novo review of the record, the Court agrees with the Magistrate Judge and finds that none of Petitioner's four (4) objections were preserved during the trial and were procedurally defaulted.

As noted by the Magistrate Judge, Petitioner raised these four (4) issues for the first time in his post-trial motion and in his appeal to the Pennsylvania Superior Court, and "the Superior Court dismissed the claims as waived because none of [the issues] were preserved at trial."  (Doc. No. 53 at 18.)  In denying Petitioner's appeal on these claims, the Pennsylvania Superior Court relied on Pennsylvania Rule of Appellate Procedure 302(a), which provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."  See Pa. R. A. P. 302(a).  The Pennsylvania Superior Court found that Petitioner did not raise any objection to the trial court's evidentiary rulings at trial, and instead raised them for the first time in a post-trial motion.  (Doc. No. 19-2 at 16.)  Under Pennsylvania Rule of Appellate Procedure 302(a), this is insufficient to preserve the claims for appellate review.  See Pa. R. A. P. 302(a).

As set forth above, "if a petitioner fairly presents a claim to the state courts, but it was denied on a state law ground that is 'independent and adequate' to support the judgment, the claim is procedurally defaulted."  (Doc. No. 53 at 6) (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  Here, Petitioner's four remaining claims were presented to the Pennsylvania Superior Court and denied on an "independent and adequate" state law ground to support the judgment— Pennsylvania Rule of Appellate Procedure 302(a).  See Werts v. Vaughn, 228 F.3d 178, 194 (3d Cir. 2000).  Thus, as found by the Magistrate Judge, this "independent and adequate" state law

ground relied on by the Pennsylvania Superior Court renders Petitioner's four claims procedurally defaulted.

Thus, the Magistrate Judge correctly found that his claims are procedurally defaulted because the Pennsylvania Superior Court held that they were waived under an "independent and adequate" state law ground: Pennsylvania Rule of Appellate Procedure 302(a).

### b. The Magistrate Judge Followed the Correct Analysis of the Procedural Default Doctrine

As set forth by Petitioner in his Written Objections, to be "firmly established and regularly followed," three requirements must be met: "(1) the state procedural rule must speak in unmistakable terms; (2) all state appellate courts must have refused to review the petitioner's claims on the merits; and (3) the state court's refusal in this instance must be consistent with other decisions." (Doc. No. 54 at 2-5.) (quoting Doctor v. Walters, 96 F.3d 675, 683-84 (3d Cir. 1996)).

Here, Pennsylvania Appellate Rule 302(a) is "firmly established and regularly followed." First, it is without question that Pennsylvania Rule of Appellate Procedure 302(a) is a state procedural rule that speaks in unmistakable terms. See Thomas v. Sec., Pa. Dept. of Corr., 495 F.App'x 200, 206 (3d Cir. 2012); see also Crocker v. Klem, 450 F. App'x 136, 138 (3d Cir. 2011). Second, the Pennsylvania Superior Court refused to review these claims on the merits because they were waived. (See Doc. No. 19-2 at 13-14.) Third, the state appellate court's refusal to evaluate these claims on the merits due to Petitioner's failure to preserve them for appellate review at trial is consistent with other decisions. See Commonwealth v. Thoeun Tha, 64 A.3d 704, 713 (Pa. Super. 2013) (holding the appellant's failure to raise an objection at trial renders the claim waived on appeal). Therefore, Petitioner's four remaining claims are procedurally defaulted.

      c.   Petitioner Fails to Establish Cause and Prejudice to Overcome Procedural Default

Petitioner has failed to establish cause and prejudice to overcome the procedural default of his four remaining claims.  As noted above, when a claim is procedurally defaulted, it cannot support the grant of a habeas petition unless the petitioner "shows cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice."  (Doc. No. 53 at 7) (citing Coleman, 501 U.S. at 729).

Petitioner argues that he has established cause and prejudice because any objections he would have made at trial "would have fallen on deaf ears, and therefore he was not required to object."  (Id.) (citing Doc. No. 1-1 at 9.)  In particular, Petitioner asserts that, when the trial court stated, "when I make a decision . . . [l]eave it,"[24] she displayed "judicial intemperance" and demonstrated that she was not receptive to Petitioner's objections.  (Doc. No. 53 at 21, n. 15.)  In support of this argument, Petitioner again relies on the exception in Hammer where the Pennsylvania Supreme Court carved out an exception to "the wavier doctrine in the case of judicial intemperance."  (See Doc. No. 54 at 2-5.)  (citing Commonwealth v. Hammer, 494 A.2d 1054, 1060 (Pa. 1985)).

---

[24] As noted supra, the trial court stated out of the presence of the jury:

> I tried to explain to you at least three times how we're going to have to deal with these photographs, and you didn't want to listen. I'm asking you, please listen. And when I make a decision, I'm trying to do the right thing. Leave it. We have a record here. If I've made a mistake to your detriment, the Superior Court will figure it out. Understood?

(Doc. No. 53 at 21, n. 15.)

The trial court's conduct in this case is unlike the impropriety of the trial court in <u>Hammer</u>. In <u>Hammer</u>, the Pennsylvania Supreme Court found that the trial judge had displayed judicial misconduct and impropriety.  494 A.2d 1054, 1060 (Pa. 1985).  The trial court posed "numerous additional questions . . . [which] prejudicially exhibited incredulity regarding the plausibility of the defendant's version of events and . . .  would be appropriate as cross-examination by the prosecution, not as questioning by the judge."  <u>Id.</u> at 1062.  The Court held that this "constitute[ed] advocacy of a point of view favoring the prosecution."  <u>Id.</u> at. 1058.  The Pennsylvania Supreme Court found that "the judge ha[d] crossed beyond the threshold of impartiality and . . . objection by counsel may be of no avail."  <u>Id.</u> at 1060.  Consequently, the Pennsylvania Supreme Court made an exception to the waiver doctrine and permitted appellate review of those claims that had not been objected to at trial.  <u>See</u> <u>id.</u> at 1064.

Here, the trial court did not conduct a judicial cross-examination of witnesses or inappropriately advocate for the prosecution as the trial court did in <u>Hammer</u>.  The trial court admittedly[25] exhibited frustration with Petitioner based upon his misunderstanding of law and rules of procedure while representing himself <u>pro se</u>.  (<u>See</u> Doc. No 1-1 at 3-4.)  Nothing in the trial court's remarks about the finality of her decisions on the record shows judicial intemperance or any overstep of the bounds of propriety.  As noted by the Magistrate Judge, the trial court did not exhibit personal bias or prejudice towards Petitioner.  Instead, the trial court occasionally interjected to clarify points and ensure that proper procedures were being followed while Petitioner invoked his right to represent himself <u>pro se</u>. The trial court must maintain control over the

---

[25] The trial court stated, "I want to start off the morning by apologizing for losing my temper. I shouldn't yell. I was frustrated yesterday, and I can do better than that. I am, I think, well-known for having the patience of Job, and yesterday I just lost it."  (Doc. No. 1-1 at 3-4.)

proceedings and facilitate the steady progress of the trial in the interests of justice.  The trial court judge in this case did just that in asserting order at trial, notwithstanding a single moment of frustration outside the presence of the jury.  Thus, Petitioner was still required to object at trial in order to preserve his arguments for appellate review.

Further, Counsel understood he had the right to object.  Petitioner objected many times on the record,[26] and even had stand-by counsel to advise him on legal procedure.  (See Doc. No. 19-1 at 3.)  Petitioner chose to represent himself pro se, however, and, as a result, he did not preserve objections to his four remaining claims.

Thus, the trial court's remarks on the record did not preclude Petitioner from objecting during trial and were not cause for the procedural default.  See Coleman, 501 U.S. at 729.  In addition, failure to consider his four (4) claims will not result in a "fundamental miscarriage of justice," as the Court agrees with the Magistrate Judge that the remaining four (4) claims are meritless.  See id.[27]  Therefore, Petitioner's four (4) remaining claims are procedurally defaulted.  Petitioner has not established either cause for the defaults or prejudice at trial, nor that a fundamental miscarriage of justice had occurred.  Therefore, no relief is warranted based on the four (4) procedurally defaulted claims.

---

[26] See, e.g., Doc. No. 19-1 at 91, 117, 126, 166, 188-208.

[27] The Magistrate Judge noted that "in addition to having waived the issues by failing to properly preserve the issues at trial, I briefly discuss why each of the issues is also meritless."  (Doc. No. 53 at 23.)

### D.  The Magistrate Judge also Correctly Found that Petitioner's Four Procedurally Defaulted Claims are also Meritless

The Magistrate Judge concluded that Petitioner's four remaining claims are not only procedurally defaulted, but also meritless.[28]  (See Doc. No. 53 at 23-28.)

In response, Petitioner raised the following objections to the Magistrate Judge's Report and Recommendation on these four remaining claims. (See Doc. No. 54.)  They include: (1) an objection to the Magistrate Judge's analysis of the trial court's comments about the prosecutor; (2) an objection to the Magistrate Judge's conclusion that the trial court was not unfair and did not abuse her discretion; (3) an objection to the Magistrate Judge's findings on his claim on reasonable doubt; (4) an objection to the Magistrate Judge's conclusion that the trial court did not abuse its discretion when excluding photographs and other documents; and (5) an objection to the general finding of the Magistrate Judge denying his Habeas Petition.  (See Doc. No. 54.)

The Court agrees with the Report and Recommendation of the Magistrate Judge; none of Petitioner's objections persuade the Court that he is entitled to habeas relief on his four (4) remaining claims.  The state courts did not make any decisions which were contrary to federal law or involved an unreasonable determination of the facts, in contravention of 28 U.S.C. § 2254(d)(1)-(2).  Additionally, no actual prejudice has been shown as a result of these alleged trial errors.

---

[28] As set forth supra, Petitioner's four remaining claims in his Habeas Petition are: (1) the trial court inappropriately commented on the prosecutor's character; (2) the trial court abused its discretion by denying Petitioner the right to "show reasonable doubt;" (3) the trial court made multiple remarks showing partiality and unfairness; and (4) the trial court abused its discretion when excluding photographs and documents as irrelevant.  (See Doc. No. 53 at 23-29.)

1. **The Magistrate Judge Correctly Found that Petitioner's Claim Regarding Comments about the Prosecutor's Character is Meritless**

   a. The Magistrate Judge's Findings on the Merits of Petitioner's Claim Regarding the Trial Court's Comments on the Prosecutor's Character

First, the Magistrate Judge found that the trial court did not inappropriately comment on the character of the prosecutor.  (See Doc. No. 53 at 23.)  Petitioner argues in his Habeas Petition that the judge inappropriately commented on the character of the prosecutor several times while sustaining objections made by the Prosecutor and during instructions to the jury.  (Id. at 23-24.)  In particular, as noted, Petitioner takes issue with two occasions where the trial court made comments regarding the character of the prosecutor when advising the jury not to undertake their own investigation of the case via the internet:

> I mentioned before you may want to know where [the prosecutor] went to law school.  You google that and you get to someplace you shouldn't be.  Not that there's anything nefarious about [the prosecutor], but it may take you to some piece of information about this case that is true or not or you should know or not or influences you in some way, so stay off the computer.

(Id. at 23.)  And later, when advising the jury not to view any media reporting from the trial, the trial court stated:

> And so while I haven't seen anyone [from the media] here, it sometimes happens that they will call someone later this afternoon, 'hey, [the prosecutor], could you tell me what happened in court today?' and not that she would ever mislead anyone, but I think it is a pretty poor way of doing reporting because then it is based on what one person tells them and then perhaps how they even interpret it.

(Id. at 23-24.)  Additionally, Petitioner takes issue with "a series of sustained objections by the prosecutor during his cross-examination of the victims and police officers, which Petitioner contends curbed his ability to argue that the witnesses were not credible."  (Id. at 23.)

However, the Magistrate Judge concluded that:

> there is no merit to Petitioner's claim that the judge's use of innocuous hypothetical examples to keep the jurors from undertaking their own investigation or viewing

51

> media reports, coupled with her appropriate rulings on evidentiary issues, added up
> to unfair commentary on the prosecutor's good character.

(Id. at 24.)  Thus, the Magistrate Judge concluded that this claim regarding the trial court's

supposed commentary on the character of the prosecutor not only was procedurally defaulted, but

also without merit. (See id.)

> b.  Petitioner's Objections to the Magistrate Judge's Finding that his Claim
>     Concerning the Trial Court's Comments about the Prosecutor is Meritless

Petitioner objects to the Magistrate Judge's Report and Recommendation concerning

comments on the prosecutor's character made by the judge at trial. (Doc. No. 54 at 6.)  Petitioner

argues that the Magistrate Judge viewed the comments of the trial judge "in a vacuum without

viewing the totality of the circumstances."  (Id.)  Relying on United States v. Olgin,[29] Petitioner

argues that the appropriate analysis in assessing a trial judge's comments before a jury requires a

balancing of the following factors: (1) the materiality of the comments, (2) its emphatic or

overbearing nature, (3) the efficacy of any curative instruction, and (4) the prejudicial effect of the

comment in light of the jury instructions as a whole."  (Id.) (citing United States v. Olgin, 745 F.2d

263 (3d Cir. 1984)).

First, Petitioner argues that the trial judge's comments were material because they gave the

jury impression that the prosecutor was "somebody who the judge believes . . ." (Id. at 7.)  Second,

Petitioner asserts the comments were emphatic and overbearing because they showed "the Judge's

opinion about the prosecutor is a good one and one worthy to believe . . . you don't get any more

emphatic[] th[a]n 'there is nothing nefarious about [the Prosecutor] or 'not that [the Prosecutor]

would ever mislead anyone.'"  (Id. at 9.)  Therefore, Petitioner asserts that the comments of the

---

[29] In United States v. Olgin, the Third Circuit held that the comments of the trial judge in using the
word "spurious" during jury instructions to describe the testimony of the defense did not
constitute reversible error.  United States v. Olgin, 745 F.2d 263, 270-71 (3d Cir. 1984).

trial court were "emphatic and overbearing." (Id.)  Third, Petitioner avers that the trial judge made

no effort to correct these two statements.  (See id.)  Fourth, and finally, Petitioner asserts that the

comments were prejudicial in their totality because they "supported the testimony of the

Prosecutor's witnesses, witnesses the Petitioner was attempting to challenge as unreliable." (Id.)

"When the judge mentioned nothing good about me and two things good about [the Prosecutor],

the jury was shown what side the Judge favored and which it didn't." (Id. at 10.)  Accordingly,

Petitioner asserts that the four factors weigh in favor of granting him a new trial.  (See id.)

> c.   The Magistrate Judge Correctly Found that Petitioner's Objection to the
> Magistrate Judge's Analysis of the Trial Court's Comments about the
> Prosecutor is Meritless

The remarks of the trial court during instructions are not material or overbearing under

Olgin.   In Olgin, the Third Circuit assessed a trial court's commentary on the evidence when

instructing the jury.  745 F.2d 263, 268 (3d Cir. 1984).  The Third Circuit noted that "[i]n order to

assist the jury in its deliberations, the trial judge may, within certain limits, comment upon the

evidence.  When doing so, however, the trial judge must not unduly influence the jury's decision,

so as to deny the defendant his right to trial by jury." Id. at 270-71.  The Third Circuit held that

the trial court's commentary of the trial judge when using the word "spurious" during jury

instructions to describe the defense's testimony had limited prejudicial effect and did not constitute

reversible error.  Id.

Here, on two occasions, the trial court used hypothetical examples in reference to the

prosecutor when advising the jury not to undertake their own investigation of the case on the

internet.  The Court agrees with the Magistrate Judge that "[t]here is no merit to Petitioner's claim

that the judge's use of innocuous hypothetical examples to keep the jurors from undertaking their

own investigation or viewing media reports . . . added up to unfair commentary on the prosecutor's

good character." (Doc. No. 53 at 24.) Petitioner has not shown any undue prejudice resulting from these remarks, and the Court finds that the comments are immaterial and unremarkable. No showing has been made that these remarks unduly influenced the jury in its decision to convict Petitioner. These remarks do not warrant a new trial.

### 2. The Magistrate Judge Correctly Concluded that Petitioner's Claim that he was Denied the Opportunity to Show Reasonable Doubt is Without Merit

#### a. The Magistrate Judge Concluded that Petitioner's Claim that he was Denied the Opportunity to Show Reasonable Doubt is Without Merit

In addition, the Magistrate Judge noted that Petitioner's claim regarding reasonable doubt was similarly meritless. (Doc. No. 53 at 24.) Petitioner asserted that he was not permitted to argue at trial that the Commonwealth had failed to show beyond a reasonable doubt that a burglary had occurred.[30] (Id.) As described by the Magistrate Judge, "Petitioner's strategy appeared to revolve around the belief that if he could convince the jury that no burglary occurred, he could avoid conviction." (Id.) For example, when Petitioner questioned the victim of the theft about the necessary repairs to his home following the break-in, attempting to cast doubt on whether his home was in fact broken into, the prosecutor objected as to relevancy:

| | |
|---|---|
| Prosecutor: | Your honor, at this point I'm going to object. I don't see what the relevance is to the receiving stolen property charge. |
| Trial Court: | I'm not sure either. [Petitioner], relevance? |
| Petitioner: | We're—we're going to the credibility of the witness, Your Honor. He said it was a- it was a burglary that was broken into. |

---

[30] As discussed supra, Petitioner supports this claim by pointing to moments at trial where the prosecution objected to his line of questioning on the grounds of relevancy and the trial court sustained the objections. (See Doc. No. 1-1 at 21-22.) Petitioner's questions were focused on interrogating the victims of the theft on whether their home was in fact broken into by walking through various repairs that took place. (See id.)

. . .

| | |
|---|---|
| Trial Court: | Again, what does this have to do with receiving stolen property? |
| Petitioner: | Credibility, Your Honor. The Commonwealth has to prove that the property was actually stolen, so if we're—we're going to the credibility to determine if this house was really burglarized and the so-called evidence was really stolen. |
| Trial Court: | Okay. Your objection is sustained, [prosecutor]. |

(Doc. No. 1-1 at 21-22.)  Petitioner argues that when the trial court sustained these kinds of objections, she precluded him from casting doubt onto the first element of his receipt of stolen property charge—whether the items in question were stolen.  (See Doc. No. 1-2 at 24.)

The Magistrate Judge found that the prosecution objected, appropriately, on the grounds of relevancy when Petitioner questioned the victim of the theft regarding items not taken during the burglary and repair costs resulting from the break-in.  (Id. at 25-26.)  "Petitioner was not charged with burglary, but only with possession of stolen goods, specifically the camera which he sold to a pawn shop, and a laptop computer which he listed on the internet for sale."  (Id. at 25.) Accordingly, the Magistrate Judge properly concluded that Petitioner's claim that he was not permitted to cast doubt on the Commonwealth's case was meritless.  (Id. at 26)

b. Petitioner Objects to the Magistrate Judge's Finding that the Trial Judge Did Not Abuse Her Discretion when Allegedly Precluding Petitioner from Showing Reasonable Doubt

Petitioner objects to the Magistrate Judge's finding as to Petitioner's reasonable doubt argument.  (See Doc. No. 54 at 10.)  At the outset, Petitioner recites the elements of his receipt of stolen property charge: the Commonwealth must prove "(1) that the property was stolen, (2) the defendant was in possession of the property, and (3) the defendant knew or had reason to believe that the property was stolen."  (Id. at 10-11) (citing Commonwealth v. Foreman, 797 A.2d 1005,

1011 (Pa. Super. 2002)).  Petitioner argues that "each time [he] sought to start to question that the burglary had actually happen[ed], [he] was cut off." (Id. at 11.)  When the trial judge sustained the Prosecutor's objection as to the relevancy of Petitioner's questions about whether the burglary occurred, Petitioner contends that he was "denied . . . the right to cast doubt on the burglary." (Id. at 12.)  Moreover, "the judge intruded on the jury's exclusive function to evaluate the credibility of the witness and to determine that the items w[ere] stolen." (Id.)  Thus, Petitioner argues that this alleged abuse of discretion warrants a reversal and remand for a new trial. (Id. at 13.)

c.  The Magistrate Judge's Correctly Found that Petitioner's Claim Concerning Reasonable Doubt is Meritless

Petitioner's argument lacks merit.  At trial, the prosecutor appropriately objected to the relevancy of certain lines of questioning, and the trial court sustained these objections.  Petitioner's questions as quoted above related to whether a burglary occurred, not whether the property in question was in fact stolen.

Under the Federal Rules of Evidence, evidence must be relevant to the charge against the defendant, that is, it must have "a tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action."  Fed. R. Evid. 201. Here, Petitioner's line of questioning regarding the occurrence of a burglary was not relevant to his charge of receipt of stolen property—a different crime with different elements.  Questions concerning repairs to a home are not of consequence to the determination of whether or not the property at issue, including the MacBook Air computer and camera, were stolen.  Thus, Petitioner's objection regarding reasonable doubt arising from the cost to repair the home following the burglary is similarly unavailing.[31]

---

[31] Even though the judge ruled the evidence inadmissible, Petitioner argued that the burglary did not occur in his closing statement:

**3. The Magistrate Judge Correctly Concluded that Petitioner's Claim about Impartial Remarks or Discussions of the Trial Court was Meritless**

   a. The Magistrate Judge Concluded that the Trial Court did not Make Multiple Remarks and Discussions Showing Partiality

Next, the Magistrate Judge concluded that Petitioner's claim regarding certain remarks of the trial court judge did not constitute a denial of a fair and impartial trial. (Doc. No. 53 at 26.) Petitioner claims that the trial court "improperly interrupted him, disrupted his case, or bullied him." (Id. at 26.)

After reviewing the record, the Magistrate Judge concluded that the Superior Court was correct in its findings that the trial court was not unfair or partial to the prosecution. "In each instance, Petitioner has taken offense to the trial judge appropriately dealing with his attempts to introduce irrelevant or inadmissible (or both) evidence, or otherwise violating the Rules of Evidence and Procedure." (Id. at 26-27.) Thus, the Magistrate Judge found that Petitioner's claim that the trial judge had not been impartial was without merit.

   b. Petitioner Objects to the Magistrate Judge's Finding that the Trial Judge did not Show Unfairness

Petitioner asserts that the Magistrate Judge incorrectly assessed the remarks and rulings of the trial court, which showed an abuse of discretion, unfairness, and partiality. (See Doc. No. 54 at 13.) He contends that the Magistrate Judge did not address the trial court's statements during Petitioner's cross-examination of a Commonwealth witness:

--------

> [s]o I don't know, but to me, with everything that it shows, it seems maybe it wasn't necessarily a burglary from what everybody's saying, according to the pieces. Maybe someone's in the house giving stuff to him. Maybe he knew somebody I don't know.

(Doc. No. 53 at 25.)

Trial Court:     Again, we'll shorten this up. I believe the process is police
                 send things out to samples out to the Pennsylvania State
                 Police Crime Lab. The first step is the serology lab to
                 determine if there is any kind of substance that can be tested
                 and to determine whether or not there is enough of that
                 substance that they can do some testing to determine sort of
                 what it is, and then they send it out if they find that there's
                 enough material to be tested, they then send it out to the DNA
                 lab. And I'll tell you why I know this. Because I've been a
                 judge for, I'm in my 17th year, and I worked in the system for
                 another 16 years. So this is not expert testimony. It's just an
                 effort to sort of explain why there are a few pieces of paper to
                 the Pennsylvania State Police Crime Lab Report.  How did I
                 do? [sic]

Witness:         Better than I could have, your honor.

(Id. at 14.)  Based on this interaction, Petitioner argues that the judge testified about procedures

employed by a Commonwealth witness and "stop[ed] Petitioner from questioning the witness and

. . . answering questions."  (Id.)  Accordingly, Petitioner argues that a new trial should be granted

on this claim.  (See id. at 15.)

      c.   Petitioner's Objection that the Magistrate Judge Failed to See that the Remarks
            of the Trial Court Showed Impartiality is without Merit

      Here, viewing Petitioner's objection on the merits, no habeas relief is warranted.  As noted

by the Magistrate Judge, "[a]t times, the trial court interjected to clarify certain points, correct

documentation, or to ask the detective questions in order to facilitate proper questioning."  (Doc.

No. 53 at 27.)  In this regard, Petitioner was not precluded from asking questions and submitting

evidence for the jury's consideration.  The interjections and helpful clarifications of the trial court

merely served to facilitate the progress of the trial and do not constitute an abuse of discretion,

impartiality, or unfairness.  Thus, this claim is without merit.

**4.  The Magistrate Judge Correctly Found that the Trial Court did not Abuse its Discretion when Excluding Irrelevant Photographs**

      a.  The Magistrate Judge Found that the Trial Court did not Abuse its Discretion when Excluding Irrelevant Photographs

Finally, the Magistrate Judge concluded that the trial court did not abuse her discretion when excluding irrelevant photographs and other documents.  (Doc. No. 53 at 27.)  As discussed supra, Petitioner sought to admit into evidence multiple photographs and documents, including "photocopies of articles relating to notorious police incidents from around the United States as well as photographs of himself . . . includ[ing] events between the MOVE organization and the police in 1978 and 1985; the sentencing of the individual who murdered the Central Park jogger; and the 1991 Rodney King beating. The personal photographs [Petitioner] sought to introduce depicted [Petitioner] helping ex-offenders at various events."  (Id.)

The Magistrate Judge concluded that the trial court did not abuse her discretion when precluding Petitioner from introducing certain pieces of irrelevant evidence.  (Id. at 28.)  The trial court "gave [Petitioner] ample opportunity to explain why the photographs were relevant to the case, but ultimately ruled that the photocopies were inadmissible."  (Id. at 27-28) (citing Doc. No. 19-2 at 17.)  Thus, the Magistrate Judge found that Petitioner's argument regarding the exclusion of evidence was meritless. (See id.)

      b.  Petitioner Objections to the Magistrate Judge's Finding that the Trial Court Appropriately Excluded Photographs and Other Documents

Petitioner objects to the Magistrate Judge's finding that the trial court did not "abuse [her] discretion . . . with respect to the Petitioner's requested exhibits" because "[n]one of [the exhibits] bear any relevance to the trial."  (Doc. No. 54 at 15.)  Petitioner asserts that this statement is refuted by testimony at trial, where Petitioner sought to admit evidence "show[ing] support for my running a successful handyman service, proof that various events shape my view of law enforcement, and

supporting various other positions that were relevant to trial." (Id.)  Therefore, Petitioner argues

that excluding this evidence denied Petitioner his right to a fair trial.  (See id.)

      c.  The Magistrate Judge Correctly Found that the Trial Court did not Abuse its Discretion and Petitioner's Objection is Meritless

This Court agrees with the Magistrate Judge and finds that the trial court's decision to

exclude this evidence was not an abuse of discretion.  The photographs and documents listed were

irrelevant to Petitioner's charge of receipt of stolen property.  In any event, the trial court permitted

Petitioner to describe each photograph on the record and his reasoning for seeking to enter it into

evidence.  (Doc. No. 1-1 at 58-62.)  After hearing a description of each photograph, the trial court

made a final decision to preclude Petitioner from entering them into evidence due to their lack of

relevancy.  (See id.)  This Court agrees with the Magistrate Judge that the trial court did not abuse

her discretion in making this evidentiary ruling at trial.

The Court has considered each of the four (4) claims occurring at trial that were

procedurally defaulted to determine whether the decisions of the state court were contrary to

federal law, involved an unreasonable determination of the facts, or resulted in actual prejudice to

Petitioner.  For the reasons set forth above, none has been shown.  Because the four (4) claims

were procedurally defaulted and on the merits do not warrant relief, these objections will be denied.

**5.  The Magistrate Judge Correctly Found that Petitioner had not shown any Violations of his Constitutional Rights**

In the Report and Recommendation, the Magistrate Judge concluded that Petitioner had

not made a showing of a denial of any constitutional right in his Habeas Petition, and thus no

habeas relief is warranted.  (See Doc. No. 53 at 28-29.)  In his Written Objections, Petitioner

generally argues that "the Magistrate's assessment that my petition should be dismissed with

prejudice in its entirety without an evidentiary hearing . . . is incorrect based on the argument cited

above and in my writ of habeas corpus." (Doc. No. 54 at 17-18.)  Petitioner argues that he made a substantial showing of a denial of his constitutional rights, and thus a new trial should be granted. (See id.)

For all the reasons described supra, this argument lacks merit.  Petitioner has not shown the denial of a constitutional right, and a new trial will not be granted based on any claim or objection raised by Petitioner in his Habeas Petition or Written Objections.

## V.    CONCLUSION

For the foregoing reasons, the Court will approve and adopt United States Magistrate Judge Lloret's Report and Recommendation (Doc. No. 53) and will deny Petitioner's § 2254 Petition for a Writ of Habeas Corpus (Doc. No. 1).  An evidentiary hearing is not warranted and a certificate of appealability shall not issue because Petitioner has not made a substantial showing of the denial of a Constitutional right.  An appropriate Order follows.